# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

ESSEX INSURANCE COMPANY,      CASE NO.:

      Petitioner,

v.

ANC CONSTRUCTION, INC.,
MICHEAL J. OVERBECK as
Personal Representative of the Estate
of Richard Scott McManis, deceased,
SANDRA MCMANIS AND KELSEY
RENEE MCMANIS,

      Respondents.

_____/

## PETITION FOR DECLARATORY RELIEF

Petitioner, ESSEX INSURANCE COMPANY ("ESSEX"), a Delaware

corporation, by and through its undersigned attorneys, files this Petition for

Declaratory Relief and states:

1.      This is an action for Declaratory Relief pursuant to 28 U.S.C. § 2201.

This action is a derivative of a 2009 state court action brought by MICHAEL J.

OVERBECK as Personal Representative of the Estate of Richard Scott McManis,

CASE NO.:

SANDRA MCMANIS and KELSEY RENEE MCMANIS (the "underlying Plaintiffs") against ANC CONSTRUCTION, INC. ("ANC"), ABC Building Group, Inc ("ABC") and Peter and Gillian Kirschner (the "Kirshners"), in the 15th Judicial Circuit Court, Palm Beach County, Florida, Case No.: 2009CA003694XXXXMBAG (the "underlying action"). Copy of this Complaint is attached hereto and incorporated herein as Exhibit "A."

## FACTS REGARDING JURISDICTION AND VENUE

2.      At all times material, ESSEX is and was a Delaware corporation with its principle place of business in Wilmington, Delaware.

3.      At all times material, ESSEX is and was a surplus lines insurer which has been made eligible by the Florida Department of Financial Services to issue coverage under Florida's Surplus Lines Law, *See* Fl. Stat. §626.901 *et seq.*

4.      At all times material hereto, ANC was Florida Corporation licensed to do and doing business in Florida.

5.      At all times material hereto, ANC maintained offices in Mangonia Park, in Palm Beach County, Florida.

6.      Upon information and belief, at all times material hereto, SANDRA MCMANIS was a resident of Martin County in the State of Florida.

CASE NO.:

7.     Upon information and belief, at all times material hereto, KELSEY RENEE MCMANIS was a resident of Martin County in the State of Florida.

8.     The Estate of Richard Scott McManis is being probated in the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida.

9.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(a), because at least one Respondent resides within the district, and a substantial part of the events giving rise to the claim occurred in the district.

10.    On information and belief the amount in controversy exceeds the sum of $75,000.00 exclusive of interest, attorney fees and costs, as the Plaintiffs in the underlying action are seeking recovery of the damages arising from the death of Richard Scott McManis, who was rendered a quadriplegic from the accident and survived 10 days under hospitalization with use of a ventilator, according the Medical Examiner's report. A copies of portions of the Office of District Medical Examiner's Report regarding Mr. McManis' death is attached here to and incorporated herein as Exhibit "B."

**GENERAL ALLEGATIONS**

11.    On or about, June 7, 2007, ESSEX issued a commercial general liability policy to ANC with policy number 3CT2392 and effective dates of June 7, 2007 to

CASE NO.:

June 7, 2008. A copy of the policy is submitted as Exhibit "C."

12.     In January, 2009, the underlying plaintiffs sued ANC, the Kirschners and ABC in the underlying action to recover damages under the theory of negligence for the death of Richard Scott McManis which occurred on October 13, 2007.

13.     Although the underlying action was filed in January, 2009, ESSEX was not given notice of the underlying action until February 22, 2010.  This notice was not received from ANC, but from counsel for the underlying Plaintiffs.

14.     In their Complaint, the underlying Plaintiffs alleged ANC was engaged in a construction and renovation project at the Co-Defendants', the Kirschners, home. *See* Exhibit "A", *Complaint*, ¶ 11.

15.     That the Kirschners "and/or" ANC "and/or" ABC hired Richard Scott McManis to work on the project. *See* Exhibit "A", *Complaint*, ¶ 12.

16.     That on October 13, 2007, Richard Scott McManis was "performing his duties as roofer" and was departing the roof on a ladder that was "owned and/or maintained by the Defendants, Kirschner's and/or ANC, and/or ABC, when the ladder failed to support him causing the decedent to fall and incur serious injuries that ultimately caused his death." *See* Exhibit "A", *Complaint*, ¶ 14.

CASE NO.:

17.     Furthermore, the underlying Plaintiffs asserted a claim of spoliation of evidence against ANC by alleging "ANC had a duty to preserve the aluminum ladder involved in this accident... [and] breached said duty...[b]y negligently failing to preserve the aluminum ladder involved in this accident."   *See* Exhibit "A", *Complaint*, ¶ 48, ¶ 50(f).

18.     The ESSEX policy provides commercial general liability coverage under Section 1-COVERAGES, COVERAGES A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, in pertinent part as follows:

> 1.     **Insuring Agreement**
>
>   a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies...

19.     The policy contains the following exclusion under **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

> 2.     **Exclusions:**
>
> This insurance does not apply to:
>
>   d.     **Worker's Compensation And Similar Laws**
>
>     Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

CASE NO.:

20.   The policy also contains the following relevant exclusion under

**SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE**

**LIABILITY:**

**2.**   **Exclusions:**

This insurance does not apply to:

**e.**   **Employer's Liability**

"Bodily injury" to:

**(1)**   An "employee" of the insured arising out of and in the course of:

   **(a)**   Employment by the insured; or

   **(b)**   Performing duties related to the conduct of the insured business; or

**(2)**   The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)**   Whether the insured may be liable as an employer or in any other capacity; and

**(2)**   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CASE NO.:

This exclusion does not apply to liability assumed by the insured under an "insured contract".

21.     Under Section V- DEFINITIONS of the policy, it contains the following definition for "Bodily Injury":

> **3.**     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

22.     The policy defines "Employee", under SECTION V - DEFINITIONS, as follows:

> **5.**     "Employee" includes a "leased worker." "Employee does not include a "temporary worker."

23.     SECTION V - DEFINITIONS under the policy contains the following definition of " Occurrence":

> **13.**     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

24.     The policy contains a COMBINATION GENERAL ENDORSEMENT [M/E -001(1/07)] which states, in part, the following:

> THIS ENDORSEMENT AMENDS THE LIABILITY COVERAGE FORM OR COVERAGE PART (hereinafter referred to as Coverage Form), AND APPLIES TO THE ENTIRE POLICY.

CASE NO.:

\*\*\*

6.      Wording in Coverage Form, 2. Exclusions, Section I –
        Coverage, e. Employer's Liability, is replaced by the
        following and applies throughout this policy:
        This insurance does not apply to liability for "Bodily
        Injury" to:

        (A) an "employee" of any insured arising out of and
        in the course of employment or while performing duties
        related to the conduct of an insured's business; or (B) any
        injury or damage to any other person including but not
        limited to spouse, child parent, brother, sister or relative of
        the "employee" as a consequence of (A). This exclusion
        applies whether an insured may be liable an as employer
        or in any other capacity and applies to any obligation to
        share damages with or repay someone else who must pay
        damages because of the injury, as well as liability assumed under
        any "Insured Contract."  Wherever the word "employee"
        appears above, it shall also mean any member, associate, co-
        employee, lease worker, temporary worker, volunteer, or any
        person or persons loaned to or volunteering services to you.

25.     The  policy  also  contains  a    ADDITIONAL  CONDITIONS

ENDORSEMENT  [Endorsement ME-002 (01/07)] which states:

        THIS  ENDORSEMENT  AMENDS  THE  LIABILITY
COVERAGE FORM OR COVERAGE PART (hereinafter referred to
as Coverage Form), AND APPLIES TO THE ENTIRE POLICY.

        This insurance does not apply to 'bodily injury', 'property
damage', 'personal injury', 'advertising injury' or any injury, loss, or
damages, including consequential injury, loss or damage, arising out of,
caused by or contributed to or as a result of:

CASE NO.:

1.(D) If contractors or subcontractors are used, it is a condition of coverage that you use only those that are insured, and carry at a minimum Commercial General Liability coverage with limits at least equal to the limits of this policy, name you as an additional insured on their policy and you require and secure certificates of insurance confirming same. Failure to comply with this condition does not void your coverage, however, limits of liability hereunder will be reduced and apply as a 'sublimit' of liability, being a Combined Single Limit, $50,000 each occurrence and in the Aggregate, including loss adjustment expenses and defense.

The sublimit would be the most payable for all damages arising out of any one occurrence, and the most payable for all claims under this policy, including investigation and defense.  If such sublimits were tendered or exhausted, we would not defend or continue to defend in any suit.

Further, there is no coverage under this policy for 'bodily injury', 'personal injury' or 'property damage' sustained by any contractor, self-employed contractor, and/or subcontractor, or any employee, leased worker, temporary worker or volunteer help of same.

26.    In addition the policy provides conditions precedent that must be met by

the insured, including under SECTION IV - COMMERCIAL   GENERAL

LIABILITY CONDITIONS, 2.a., 2.b. and 2.c. which states:

2.     **Duties In The Event of Occurrence, Offense, Claim or Suit**

a.     You must see to it that we are notified as soon as practicable of an "occurrence" or an

CASE NO.:

offense which may result in a claim. To the
extent possible, notice should include:

(1)     How, when where the "occurrence"
        or offense took place;

(2)     The names and addresses of any injured
        persons and witnesses; and

(3)     The nature location of any injury or
        damage arising out of the "occurrence" or
        offense

b.  If a claim is made or suit is brought against
    any insured, you must:

    (1)     Immediately record the specifics of
            the claim or "suit" and the date received;
            and

    (2)     Notify us as soon as practicable.

    You must see to it that we receive written notice
    of the claim or "suit" as soon as practicable.

c.  You and any other involved insured must:

    (1)     Immediately send us copies of any demands,
            notice, summons or legal papers received
            in connection with the claim or suit;

    (2)     Authorize us to obtain records and other
            information:

    (3)     Cooperate with us in the investigation or

CASE NO.:

settlement of the claim or defense against
the "suit"; and

(4)    Assist us, upon our request, in the enforcement
of any right against any person or organization
which may be liable to the insured because of
injury or damage to which this insurance may apply.

**\*\*\*\***

27.    ESSEX is in doubt of its rights under the policy and, by this Petition

seeks declaration of its rights and obligations with respect to the underlying action

and a finding by this Court that under the above referenced policy of insurance,

ESSEX has no duty to indemnify or defend ANC and its agents in connection with

the underlying action because coverage is precluded or reduced by one or more

exclusions under the policy, including those referenced above, and/or because

coverage has been forfeited as a result of the insured(s) failure to comply with the

notice conditions or conditions precedents of the policy.

28.    There exists a bona fide actual present and practical need for the

declaration of coverage available under the policy, and the rights and obligations of

ESSEX.

CASE NO.:

29.    There exists a present ascertained or ascertainable state of facts or present controversy as to a state of facts concerning the rights and obligation of ESSEX under the policy.

30.    The rights and obligations of ESSEX under the policy are dependent upon the facts and the law applicable to the facts affecting coverage under the policy.

31.    ESSEX and each of the Respondents have an actual, present controversy in the subject matter described herein.

32.    All proper and present interests are before the Court by proper process.

33.    All conditions precedent to the initiation and maintenance of this action have been complied with, have occurred, or have been waived.

WHEREFORE, Petitioner, ESSEX INSURANCE COMPANY, respectfully requests this Court to enter a judgment declaring that:

A.    ESSEX has no duty to defend ANC and its agents in the underlying action;

B.    ESSEX has no duty to indemnify ANC and its agents as to any verdicts, judgments or settlements in the underlying action; and

C.    ESSEX further requests judgment for its costs and disbursements incurred herein and for such other relief as may be warranted.

CASE NO.:

DATED this 30th day of August, 2010.

McINTOSH, SAWRAN, PELTZ &
CARTAYA, P.A.
1776 East Sunrise Boulevard
Fort Lauderdale, Florida 33304
Telephone: (954) 765-1001
Facsimile: (954) 765-1005

By: _____
DOUGLAS M. MCINTOSH
Florida Bar No.: 325597
DAVID C. DUNHAM
Florida Bar No.: 989990

IN THE CIRCUIT COURT OF THE 15ᵗʰ
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CASE NO. 2009CA003694XXXXMBAG

MICHAEL J. OVERBECK as Personal
Representative of the Estate of Richard Scott
McManis, deceased, SANDRA McMANIS,
Individually and as Surviving Spouse,
KELSEY RENEE McMANIS, Individually
and as Surviving Child,

Plaintiffs,

***COPY***

vs.

ABC BUILDING GROUP, INC., a Florida
Corporation, ANC CONSTRUCTION, INC.,
a Florida Corporation and PETER
KIRSCHNER, Individually and as Husband,
and GILLIAN KIRSCHNER, Individually
and as Wife,

Defendants.                    /

**COMPLAINT**

COMES NOW, the Plaintiff, MICHAEL J. OVERBECK as Personal Representative of

the Estate of Richard Scott McManis, deceased, SANDRA McMANIS, Individually and as

surviving spouse, KELSEY RENEE McMANIS, Individually and as surviving child, by and

through their undersigned attorney, and sue the Defendants, ABC BUILDING GROUP, INC.,

a Florida Corporation, (herein after referred to as "ABC"), ANC CONSTRUCTION, INC., a

Florida Corporation, (herein after referred to as "ANC"), PETER KIRSCHNER, Individually

and as Husband and GILLIAN KIRSCHNER, Individually and as Wife (herein after referred

to as "KIRSCHNER's") based upon the following allegations:

**EXHIBIT**

**A**

## ALLEGATIONS COMMON TO ALL COUNTS

1.     This is an action for damages and an against the named Defendants in excess of Fifteen Thousand ($15,000.00) Dollars.

2.     MICHAEL J. OVERBECK has been appointed and is the Personal Representative of the Estate of RICHARD SCOTT McMANIS, deceased which will be probated in the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida.

3.     At all times material hereto, the negligence that caused injury to and the death of RICHARD SCOTT McMANIS occurred in Palm Beach County, Florida and therefore venue is proper in Palm Beach County, Florida

4.     At the time of Richard Scott McManis' death he was survived by his wife, Sandra McManis (date of birth - May 27, 1967) and his daughter, KELSEY McMANIS (date of birth - October 29, 1991).

5.     At all times material hereto, Defendant PETER KIRSCHNER and GILLIAN KIRSCHNER were residents of Palm Beach County, Florida.

6.     At all times material hereto, Defendants, PETER KIRSCHNER and GILLIAN KIRSCHNER were married and living as Husband and Wife.

7.     At all times material hereto, Defendant, ABC was a Florida company licensed to do business in Florida and was doing business in Palm Beach County, Florida.

8.     At all times material hereto, Defendant, ANC was a Florida corporation licensed to do business in Florida and was doing business in Palm Beach County, Florida.

9.     On October 13, 2007, the Defendants, KIRSCHNER's resided in, owned and

otherwise controlled the premises located at 7258 Encina Lane, Boca Raton, Palm Beach County, Florida (hereafter sometimes referred to as "the subject premises") where the injuries which lead to the wrongful death of Richard Scott McManis occurred.

    10.    At all times material hereto, the Defendant, ABC was engaged in the construction and renovation project of the subject premises.

    11.    At all times material hereto, the Defendant, ANC was engaged in the construction and renovation project of the subject premises.

    12.    Prior to and including October 13, 2007, the Defendants, KIRSCHNER's and/or ANC and/or ABC hired the decedent, Richard Scott McManis to perform roofing and/or repair of the roof at the subject premises.

    13.    The Defendants, KIRSCHNER's, and/or ANC and/or ABC knew or should have known the existence of defective and/or dangerous conditions on the subject premises, which included an aluminum extension ladder that was damaged and/or maintained in a poor condition not fit for safe use, and the Defendants failed to warn the decedent, Richard Scott McManis of the defective and/or dangerous condition existing on the premises or eliminate the dangerous condition.

    14.    On October 13, 2007, the decedent, Richard Scott McManis was performing his duties as a roofer departing the roof on the above-referenced ladder that was owned and/or maintained by the Defendants, KIRSCHNER's, and/or ANC, and/or ABC when the ladder failed to support him causing the decedent, Richard Scott McManis to fall and incur serious injuries that ultimately caused his death.

## COUNT I - NEGLIGENCE OF PETER KIRSCHNER and GILLIAN KIRSCHNER

    15.    The Defendants, KIRSCHNER's as owners of the property located at 7528

Encina Lane, Boca Raton, Palm Beach County, Florida had a non-delegable duty to use reasonable care and to take safety precautions to protect invitees on the subject premises; more specifically, the decedent, Richard Scott McManis from injury and death due to defective and/or dangerous conditions which existed on the subject premises; the Defendants failed to uphold that duty at the time that the decedent, Richard Scott McManis' occupied the premises by allowing a defective ladder to exist and be used and failed to warn about the defective and unusable condition of the above-referenced aluminum extension ladder;

16.     At all times material hereto the dangerous condition and defective condition of the aluminum ladder was unknown to and not readily discoverable by the decedent, Richard Scott McManis.

17.     The Defendants, KIRCHNER's, were acting in the dual capacity as owners of the property and general contractor. As owner and general contractor Defendants, KIRSCHNER's owed a duty to maintain the construction site in a reasonably safe condition and warn and eliminate dangers.

18.     The Defendants, KIRSCHNER's, as owners continually interfered and meddled with the remodeling construction job at the subject premises to the extent they assumed detailed direction of the remodeling and therefore became the master of the decedent, Richard Scott McManis.

19.     The Defendants, KIRSCHNER's negligently created and/or negligently approved the dangerous conditions on their property resulting in the death of Richard Scott McManis.

20.     The Defendants, KIRSCHNER's had actual and/or constructive knowledge of latent or potential dangers on their property and failed to either give warning of or use ordinary care to furnish protection against the said dangerous conditions and/or eliminate the said

dangers to decedent, Richard Scott McManis.

21.     At all times material hereto, the Defendants, KIRSCHNER's committed acts of negligence that whole or in part that caused the personal injuries and death of Richard Scott McManis. As owners the Defendant Kirschner's have a non-delegable duty of care to those who are engaged in the performance of work on their property and are vicariously liable for any negligence of Defendants, ABC and/or ANC.

22.     The Defendants, KIRSCHNER's were negligent in creating and/or negligent in approving the dangerous conditions on their property that resulted of the death of Richard Scott McManis.

23.     The Defendants, KIRSCHNER's hired Defendant, ANC CONSTRUCTION and or decedent, Richard Scott McManis directly.  Defendants, KIRSCHNER's personally paid the decedent, Richard Scott McManis and/or Defendant, ANC directly.

24.     The   Defendants,   KIRSCHNER's   took   an   active   role   in   the remodeling/construction project by including but not limited to directing, supervising, managing and controlling the work of the sub-contractors on the job and in particular the decedent, Richard Scott McManis so as to directly influence the matter in which the work was performed.

25.     The Defendants, KIRSCHNER's in assuming the above-referenced role, had a duty to act in a non-negligent manner so as to not endanger workers on the premises and eliminate dangers and in particular decedent, Richard Scott McManis.

26.     On October 13, 2007 Defendants, KIRSCHNER's owed a non-delegable duty to the Decedent, Richard Scott McManis, to supervise, direct, manage, and control construction activities in a safe manner at the subject premises.

27.     At all times material hereto the Defendants, KIRSCHNER's had a duty to

preserve the aluminum ladder involved in this accident.

     28.   On October 13, 2007, Defendants, KIRSCHNER's breached said duty of care by, including but not limited to:

        a.     By negligently failing to provide a reasonably safe place to work to the decedent, Richard Scott McManis;

        b.     By negligently failing to provide adequate supervision and personnel to see that the subject work was carried out in a safe and workmanlike manner, and to prevent the decedent, Richard Scott McManis, from falling which ultimately caused his death;

        c.     By negligently failing to adequately direct, manage, and control the remodeling/construction activities on the subject premises;

        d.     By negligently failing to warn decedent, Richard Scott McManis of a dangerous condition on said property;

        e.     By negligently failing to remove from the subject premises the damaged and/or defective aluminum ladder involve in this accident;

        f.     By negligently failing to preserve the aluminum ladder involved in this accident;

        g.     By owning and/or providing and/or allowing a damaged ladder on their premises for use by the decedent, Richard Scott McManis which failed; and

        h.     By negligently failing to comply with standards and regulations pertaining to construction and all other applicable standards and regulations as mandated by the Occupational Health and Safety Administration.

29.     As a direct and proximate result of the said negligence of the Defendants,

KIRSCHNER's, as herein alleged, decedent, Richard Scott McManis, was caused

to fall from a defective and/or damaged extension aluminum ladder and suffered serious bodily

injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of

capacity for the enjoyment of life, expense of hospitalization, medical and nursing care

treatment, loss of earning capacity in the future, and/or an aggravation of a previously existing

condition and/or ultimately suffered death. These losses are either permanent and/or continuing

and SANDRA McMANIS, Individually and as Surviving Spouse, and KELSEY RENEE

McMANIS, Individually and as Surviving Child, will suffer said losses in the future.

30.     The following are survivors as declared under Florida Wrongful Death Act,

Florida Statute 768.16-76.27:

      a.     Sandra McManis, date of birth, May 27, 1964, surviving spouse; and

      b.     Kelsey R. McManis, date of birth, August 29, 1991, surviving natural

         child.

31.     Pursuant to Florida Wrongful Death Act the survivors have suffered the

following damages:

      a.     The value of loss of support and services from the date of the decedent's

         injury to his death, with interest, and future loss of support and services

         from the date of death.

      b.     As surviving child, Kelsey R. McManis has suffered loss of parental

         companionship, instruction and guidance and mental pain and suffering

         from the date of injury; and as surviving spouse, Sandra McManis has

         suffered loss of the decedent's companionship and protection and mental

pain and suffering from the date of the injury.

c. The decedent's estate has suffered loss of prospective net accumulations of the estate which might reasonably have been expected but for the wrongful death.

d. The survivors and/or estate have incurred medical and funeral expenses due to the decedent's injury and death.

32. Pursuant to Florida's Wrongful Death Act, the decedent's Personal Representative, MICHAEL J. OVERBECK, may specifically recover for the decedent's estate the following:

a. Loss of the prospective net accumulations of the estate which might reasonably have been expected but for the wrongful death due to the fact that the decedent's survivors includes a spouse, Sandra McManis and one minor child, Kelsey R. McManis.

b. Medical and/or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of the decedent.

WHEREFORE, MICHAEL J. OVERBECK as Personal Representative of the Estate of Richard Scott McManis, deceased, SANDRA McMANIS, Individually and as Surviving Spouse, and KELSEY RENEE McMANIS, Individually and as Surviving Child, demand an award of all damages awardable in law and equity from the Defendants, PETER KIRSCHNER and GILLIAN KIRSCHNER, and demand a trial by jury of all issues so triable, and any other relief as this Honorable Court deems just and proper.

## COUNT II - ABC BUILDING GROUP, INC.

33.     At all times material hereto, Defendant, ABC was a general contractor as defined in Section 489.105, Florida Statute, as well as a qualifying agent defined under said statue pertaining to performing construction work at the subject premises in connection with renovations to Defendants, KIRSCHNER's home.

34.     Prior to and including October 13, 2007, Defendant, ABC was the designated general contractor on the subject premises.

35.     As the general contractor, Defendant, ABC has the duty of ensuring the safety of decedent Richard Scott McManis while he worked on the subject premises.

36.     On October 13, 2007, Defendant, ABC owed a non-delegable duty to the decedent, Richard Scott Mcmanis to supervise, direct, manage, and control construction activities in a safe manner at the subject premises.

37.     At all times material hereto the Defendant ABC had a duty to preserve the aluminum ladder involved in this accident.

38.     At all times material hereto the dangerous and/or defective condition of the aluminum ladder was unknown to and not readily discoverable by the decedent Richard Scott McManis

39.     On October 13, 2007, Defendant, ABC breached said duty by the following, without necessary limitation:

        a.     By negligently failing to provide a reasonably safe place to work to the decedent, Richard Scott McManis;

        b.     By negligently failing to provide adequate supervision and personnel to see that the subject work was carried out in a safe and workmanlike

manner, and to prevent the decedent, Richard Scott McManis, from falling which ultimately caused his death;

c. By negligently failing to adequately direct, manage, and control the construction activities on the subject premises;

d. By negligently failing to warn decedent, Richard Scott McManis, of a dangerous condition on said property;

e. negligently failing to remove from the subject premises the damaged and/or defective aluminum ladder involved in this accident;

f. By negligently failing to preserve the aluminum ladder involved in this accident;

g. By owning and/or providing a damaged and/or defective ladder for use by the decedent, Richard Scott McManis which failed; and

h.. By negligently failing to comply with standards and regulations pertaining to remodeling/construction activities, general construction procedures, and all other applicable standards and regulations as mandated by the Occupational Health and Safety Administration.

40. As a direct and proximate result of the said negligence of the Defendant, ABC's, as herein alleged, decedent, Richard Scott McManis, was caused to fall from a defective and/or damaged aluminum ladder and suffered serious bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earning capacity in the future, and/or an aggravation of a previously existing condition and/or ultimately suffered death. These losses are either permanent and/or continuing and SANDRA McMANIS, Individually and as

Surviving Spouse, and KELSEY RENEE McMANIS, Individually and as Surviving Child, will suffer said losses in the future.

41.     The following are survivors as declared under Florida Wrongful Death Act, Florida Statute 768.16-76.27:

  a.   Sandra McManis, date of birth; May 27, 1964, surviving spouse; and

  b.   Kelsey R. McManis, date of birth, August 29, 1991, surviving natural child.

42.    Pursuant to Florida Wrongful Death Act the survivors have suffered the following damages:

  a.   The value of loss of support and services from the date of the decedent's injury to his death, with interest, and future loss of support and services from the date of death.

  b.   As surviving child, Kelsey R. McManis has suffered loss of parental companionship, instruction and guidance and mental pain and suffering from the date of injury; and as surviving spouse, Sandra McManis has suffered loss of the decedent's companionship and protection and mental pain and suffering from the date of the injury.

  c.   The decedent's estate has suffered loss of prospective net accumulations of the estate which might reasonably have been expected but for the wrongful death.

  d.   The survivors and/or estate have incurred medical and funeral expenses due to the decedent's injury and death.

43.    Pursuant to Florida's Wrongful Death Act, the decedent's Personal

Representative, MICHAEL J. OVERBECK, may specifically recover for the decedent's estate the following:

    a.    Loss of the prospective net accumulations of the estate which might reasonably have been expected but for the wrongful death due to the fact that the decedent's survivors includes a spouse, Sandra McManis and one minor child, Kelsey R. McManis.

    b.    Medical and/or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of the decedent.

WHEREFORE, MICHAEL J. OVERBECK as Personal Representative of the Estate of Richard Scott McManis, deceased, SANDRA McMANIS, Individually and as Surviving Spouse, and KELSEY RENEE McMANIS, Individually and as Surviving Child, demand an award of all damages awardable in law and equity from the Defendant, ABC BUILDING GROUP, INC., and demand a trial by jury of all issues so triable, and any other relief as this Honorable Court deems just and proper.

### COUNT III - ANC CONSTRUCTION, INC.

44.    At all times material hereto, Defendant, ANC was a general contractor as defined in Section 489.105, Florida Statute, as well as a qualifying agent defined under said statue pertaining to performing construction work at the subject premises in connection with renovations to Defendants, KIRSCHNER's home.

45.    Prior to and including October 13, 2007, Defendant, ANC was the designated general contractor on the subject premises.

46.    As the general contractor, Defendant, ANC has the duty of ensuring safety on the subject premises..

47.    On October 13, 2007, Defendant, ANC owed a non-delegable duty to the decedent, Richard Scott McManis to supervise, direct, manage, and control construction activities in a safe manner at the subject premises.

48.    .At all times material hereto the Defendant ANC had a duty to preserve the aluminum ladder involved in this accident.

49.    At all times material hereto the dangerous and/or defective condition of the aluminum ladder was unknown to and not readily discoverable by the decedent Richard Scott McManis.

50.    On October 13, 2007, Defendant, ANC breached said duty by the following, without necessary limitation:

      a.    By negligently failing to provide a reasonably safe place to work to the decedent, Richard Scott McManis;

      b.    By negligently failing to provide adequate supervision and personnel to see that the subject work was carried out in a safe and workmanlike manner, and to prevent the decedent, Richard Scott McManis, from falling which ultimately caused his death ;

      c.    By negligently failing to adequately direct, manage, and control the construction activities on the subject premises;

      d.    By negligently failing to warn decedent, Richard Scott McManis, of a dangerous condition on said property;

e.    By negligently failing to remove the damaged and/or defective aluminum ladder involved in this accident;

f.    By negligently failing to preserve the aluminum ladder involved in this accident;

g.    By owning and/or providing a damaged and/or defective ladder for use by the decedent, Richard Scott McManis which failed; and

h.    By negligently failing to comply with standards and regulations pertaining to remodeling/construction activities, general construction procedures, and all other applicable standards and regulations as mandated by the Occupational Health and Safety Administration.

51.    As a direct and proximate result of the said negligence of the Defendants, KIRSCHNER's, as herein alleged, decedent, Richard Scott McManis, was caused to fall from a defective extension aluminum ladder and suffered serious bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earning capacity in the future, and/or an aggravation of a previously existing condition and/or ultimately suffered death. These losses are either permanent and/or continuing and SANDRA McMANIS, Individually and as Surviving Spouse, and KELSEY RENEE McMANIS, Individually and as Surviving Child, will suffer said losses in the future.

52.    The following are survivors as declared under Florida Wrongful Death Act, Florida Statute 768.16-76.27:

a.    Sandra McManis, date of birth, May 27, 1964, surviving spouse; and

b.    Kelsey R. McManis, date of birth, August 29, 1991, surviving natural child.

53.   Pursuant to Florida Wrongful Death Act the survivors have suffered the following damages:

a.   The value of loss of support and services from the date of the decedent's injury to his death, with interest, and future loss of support and services from the date of death.

b.   As surviving child, Kelsey R. McManis has suffered loss of parental companionship, instruction and guidance and mental pain and suffering from the date of injury; and as surviving spouse, Sandra McManis has suffered loss of the decedent's companionship and protection and mental pain and suffering from the date of the injury.

c.   The decedent's estate has suffered loss of prospective net accumulations of the estate which might reasonably have been expected but for the wrongful death.

d.   The survivors and/or estate have incurred medical and funeral expenses due to the decedent's injury and death.

54.   Pursuant to Florida's Wrongful Death Act, the decedent's Personal Representative, MICHAEL J. OVERBECK, may specifically recover for the decedent's estate the following:

a.   Loss of the prospective net accumulations of the estate which might reasonably have been expected but for the wrongful death due to the fact that the decedent's survivors includes a spouse, Sandra McManis and one minor child, Kelsey R. McManis.

b.   Medical and/or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of the decedent.

WHEREFORE, MICHAEL J. OVERBECK as Personal Representative of the Estate of Richard Scott McManis, deceased, SANDRA McMANIS, Individually and as Surviving Spouse, and KELSEY RENEE McMANIS, Individually and as Surviving Child, demand an award of all damages awardable in law and equity from the Defendant, ANC CONSTRUCTION, INC., and demand a trial by jury of all issues so triable, and any other relief as this Honorable Court deems just and proper.

Dated: January____, 2009.

> Slawson Cunningham Whalen & Gaspari, P.L.
> 2401 PGA Boulevard, Suite 140
> Palm Beach Gardens, FL 33410
> (561) 625-6260
> (561) 625-6269 (facsimile)
> Attorney for Plaintiff
>
> _____
> David M. Gaspari
> Florida Bar # 793590

From: nown   Page: 3/11   Date: 3/19/2008 4:28:   \M



**OFFICE OF THE DISTRICT MEDICAL EXAMINER**
**DISTRICT 15 – STATE OF FLORIDA**
**PALM BEACH COUNTY**
**3126 GUN CLUB ROAD**
**WEST PALM BEACH, FLORIDA 33406-3005**
**(561) 688-4575.**
**(561) 688-4592 FAX**

NAME:   MCMANIS, RICHARD                      CASE NUMBER: 07-1258

DATE OF DEATH: October 23, 2007        AGE:   41   SEX:  M   RACE:  W

DATE OF AUTOPSY: October 24, 2007 / 1:35 p.m.

**AUTOPSY FINDINGS:**

1. Blunt force injury of the neck:
   a.) Fracture of 2nd and 3rd cervical vertebrae.
   b.) Remote metal hardware placement.
2. Contusion of left anterior tongue.
3. Mild cerebral edema.
4. Moderate to marked pulmonary congestion.
5. Right lung pleural adhesions.
6. Pericardial adhesions.
7. Right liver and right abdominal adhesions.
8. Remote filter placement in the right iliac vein.
9. Remote tracheostomy placement.

**CAUSE OF DEATH:**     Blunt force neck injury.

**MANNER OF DEATH:**     Accident

**OPINION:** Richard, McManis, a 41 year old gentleman, died from blunt force neck injury due to a fall

Jennifer Park, D.O.
Associate Medical Examiner

Date Signed:  February 12, 2008

JP:df

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com



EXHIBIT
B

From: Unknown     Page: 11/11     Date: 3/19/2008 4:28     AM

ME-97-1258
OCTOBER 24, 2007
INVESTIGATION REPORT
PREPARED BY JULIO LANGUASCO
FORENSIC INVESTIGATOR

At 7:15 p.m., October 23, 2007, I received a phone call from a dispatcher at Palm Beach
County Sheriff's Office (PBSO) and was requested to call Nurse Jenis Adamiel, in
reference to the death of Richard Mc Manis, age 41, at Delray Medical Center (DMC),
Delray Beach, Florida.

According to the information that I received from Nurse Adamiel, on October 13, 2007,
Mr. McManis fell from a ladder from approximately 11 feet height. He landed on his
head to the ground. A witness called 911. Boca Raton Fire Rescue responded and
transported Mr. McManis to DMC. His Glasgow scale was 3 on his way to DMC. Mr.
McManis was diagnosed with C1-C2 and T3-T6 fractures at the emergency room. He
was transferred to trauma ICU and maintained with assisted ventilation. He was
quadriplegic. He was made hospice patient on October 23. According to Nurse Adamiel,
Mr. McManis had history of seizures and he was shot in lower chest and abdomen
approximately ten years ago. She also stated that Detective Pijuan of BRPD was in
charge of the investigation.
Mr. McManis's mother Wanda Peterson was notified that her son's body would be
transported to this office for further examination.
Elite Removal Service was dispatched at 7:50 p.m., October 23. Medical Records would
be sent with the body.
At 10:30 a.m., October 24, I spoke with Detective Pijuan of BRPD. He stated that the
incident occurred at around 2:00 p.m., October 13, at 7258 Encino Lane, Boca Raton,
Florida. Mr. McManis was a roofer for A&C Roofing working on a private residence. He
lost his balance and fell from the ladder. His co-worker called 911. Pijuan also mentioned
that in 1992, Mr. McManis was shot outside of private residence in Missouri. He was
shot in his lower chest and abdomen. No other information was available at that time.

End of Report

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

### AFFIDAVIT OF DIANNE DOUGHERTY

State of Florida
Orange County

Before me the undersigned officer duly authorized to administer oaths, personally appeared Dianne Dougherty, who is personally known to me, and after having been duly sworn, deposes and states:

1. My name is Dianne Dougherty, I am over the age of 18, I suffer from no legal disability, and I make this affidavit based upon my personal knowledge except as otherwise stated.

2. I work for Gresham and Associates, Inc. ("Gresham and Associates") in its Orlando, Florida office. Gresham and Associates is a Georgia corporation, and is an insurance wholesaler. Gresham and Associates provides brokerage and underwriting services to various insurance companies.

3. I am an underwriter for Gresham and Associates. Underwriters are responsible for rating insurable risks to determine what premium should be charged based upon specific risk characteristics. As an underwriter, I rate insurable risks according to insurance company underwriting guidelines, and as required by the binding authority contracts that Gresham and Associates has with various insurance companies.

4. Gresham and Associates has such a binding authority contract with Essex Insurance Company ("Essex"). Under that contract, Gresham and Associates is authorized to rate insurable risks to determine the appropriate premium to charge, and to issue policies according to Essex's requirements.

5. I was Gresham and Associates' underwriter for Essex Policy No.: 3CT2392 for the insured ANC Construction, Inc. Because ANC Construction, Inc. is a residential general contractor, my underwriting work on this account was subject to an Essex underwriter's approval.



6. Essex Policy No.: 3CT2392 provided Commercial General Liability Insurance to ANC Construction, Inc., with a coverage effective date June 7, 2007. On behalf of Essex, and subject to its approval, I underwrote the commercial general liability coverage for ANC Construction, Inc., and caused Essex Policy No.: 3CT2392 to be issued.

7. Gresham and Associates maintains its insurance policy files electronically, in a paperless environment. Accordingly, the attached copy of the Policy is printed from an electronic database, and is a true copy of Essex Policy No.: 3CT2392 as maintained in the ordinary course of business.

8. Attached, as Exhibit 1 is a true copy of Essex Policy No.: 3CT2392 for the insured ANC Construction, Inc. This coverage was underwritten by Gresham and Associates through Essex Insurance Company.

9. The attached Essex Policy No.: 3CT2392 is a true, complete copy of the policy and all endorsements as maintained by Gresham and Associates in the ordinary course of its insurance business.


FURTHER AFFIANT SAYETH NAUGHT

Dianne Dougherty
Underwriter
Gresham and Associates, Inc.


Sworn and Subscribed before me this ___ day of August, 2010.


NOTARY PUBLIC



DIANNE HAMPTON
Notary Public - State of Florida
My Comm. Expires May 17, 2013
Commission # DD 890328

2

# Exhibit 1

12/20/2007 02:27 PM 67201_28013

**ESSEX INSURANCE COMPANY**

**MARKEL**

**ENDORSEMENT**

7

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CT2392 | 11/27/2007 | ANC CONSTRUCTION, INC.<br>720 BUSINESS PARK BLVD #10 |

In consideration of the return premium it is hereby understood and agreed that this Policy is cancelled due to Non-Payment of Premium on a Pro Rate .526 Basis  Cancellation Subject To Aduit

| | |
|---|---|
| Premium | $16,280 |
| Surplus Lines Tax | $814.00 |
| Stamping Fee | $16.28 |
| CAT Fund | $162.80 |
| Total Return Premium | $17,237.08 |

SURPLUS LINES AGENTS NAME:
SURPLUS LINES AGENTS ADDRESS:

ANDREW H. PACKARD
11175 S. CORPORATE BLVD
SUITE 300
ORLANDO FL 32817
A259499

SURPLUS LINES AGENTS LICENSE #:
PRODUCING AGENTS NAME:
PRODUCING AGENTS ADDRESS:

STEVEN RICKNER
585-1 BANYAN AVE
ORLANDO, FL 3258

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLI-GATION OF AN INSOLVENT UNLICENSED INSURER."

AP/DD

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company

_Andrew H Packard_
AUTHORIZED REPRESENTATIVE

011 - 1009 (7-80)               INSURED

 **ESSEX INSURANCE COMPANY**

## ENDORSEMENT

7

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CT2392 | 11/27/2007 | ANC CONSTRUCTION, INC.<br>720 BUSINESS PARK BLVD #10 |

In consideration of the return premium it is hereby understood and agreed that this Policy is cancelled due to Non-Payment of Premium on a Pro Rate .526 Basis  Cancellation Subject To Aduit

| | |
|---|---|
| Premium | $16,280 |
| Surplus Lines Tax | $814.00 |
| Stamping Fee | $16.28 |
| CAT Fund | $162.80 |
| Total Return Premium | $17,237.08 |

AP/DD

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company

AUTHORIZED REPRESENTATIVE

011 - 1009 (7-80)                    INSURED

11/09/2007 11:13 AM 67201_27597

**ESSEX INSURANCE COMPANY**

**MARKEL**

### ENDORSEMENT
#6

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CT2392 | 11/01/2007 | ANC Construction, Inc. 10921 Bayshore Drive |

It is understood and agreed that Per attached revised Form 011-1056 - Commercial Liability Coverage the Mailing address is amended to read as follows:

    10921 Bayshore Drive
    Windermere, FL 34786

All other terms and conditions remain the same.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company

Gresham & Associates
PO Box 677219
Orlando, FL 32867
CB/DD

Andrew H Packard
AUTHORIZED REPRESENTATIVE

011 - 1009 (7-80)                     INSURED



## ESSEX INSURANCE COMPANY

### ENDORSEMENT
#6

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have same inception date.*

| ATTACHED TO AND FORMING<br>PART OF POLICY NO. | *EFFECTIVE DATE<br>OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CT2392 | 11/01/2007 | ANC Construction, Inc.<br>10921 Bayshore Drive |

It is understood and agreed that Per attached revised Form 011-1056 - Commercial Liability Coverage the Mailing address is amended to read as follows:

    10921 Bayshore Drive
    Windermere, FL 34786


All other terms and conditions remain the same.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company

Gresham & Associates
PO Box 677219
Orlando, FL 32867
CB/DD

AUTHORIZED REPRESENTATIVE

011 - 1009 (7-80)                    INSURED

10/30/2007 09:18 AM 67201_27412

**MARKEL**

**ESSEX INSURANCE COMPANY**

**ENDORSEMENT**

#5

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CT2392 | 06/07/2007 | ANC CONSTRUCTION, INC. 720 BUSINESS PARK BLVD #10 |

In consideration of the Return Premium it is understood and agreed that Endorsement #3 is Null & Void.

```
Return Premium     $32466
Surplus Lines Tax  $1623.30
Policy Fee         $32.47
Cat Asst Fee       $324.66
TOTAL PREMIUM      $34446.43
```

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

SURPLUS LINES AGENTS NAME:   ANDREW H. PACKARD
SURPLUS LINES AGENTS ADDRESS: 11335 S. CORPORATE BLVD
                             SUITE 300
                             ORLANDO FL 32817
                             E294109
SURPLUS LINES AGENTS LICENSE#:
PRODUCING AGENTS NAME:        STEVE RUDNICK
PRODUCING AGENTS ADDRESS:     5639 HANSEL AVE
                             ORLANDO, FL 32856

"THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER."

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company

Gresham & Associates
PO Box 677219
Orlando, FL 32867
CB/DD

*Andrew H Packard*
**AUTHORIZED REPRESENTATIVE**

011 - 1009 (7-80)          INSURED

 **ESSEX INSURANCE COMPANY**

## ENDORSEMENT
#5

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CT2392 | 06/07/2007 | ANC Construction, Inc. 720 Business Park Blvd #10 |

In consideration of the Return Premium it is understood and agreed that Endorsement #3 is Null & Void.

Return Premium       $32466
Surplus Lines Tax    $1623.30
Polcy Fee            $32.47
Cat Asst Fee         $324.66
Total Return Premium - $34446.43

All other terms and conditions remain the same.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company

AUTHORIZED REPRESENTATIVE

011 - 1009 (7-80)          INSURED

 **ESSEX INSURANCE COMPANY**

**MARKEL**

## ENDORSEMENT
#4

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | \*EFFECTIVE DATE OF ENDORSEMENT | \*ISSUED TO |
|---|---|---|
| 3CT2392 | 07/23/2007 | ANC CONSTRUCTION, INC. 720 BUSINESS PARK BLVD #10 |

In consideration of the Additioanl Premium, It is understood and agreed that the Additional Insured & Waiver of Rights is added for Warwick Construction Inc. per attached Forms ME-009- Additional Insured Endorsement and ME-241 - Waiver of Subrogation


Additional Premium - $250
Surplus Lines Tax - $12.50
Policy Fee - $.25
Asst Fee - $2.50
Total Additional Premium - $265.25



ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company

Gresham & Associates
PO Box 677219
Orlando, FL 32867
CB/DD

**AUTHORIZED REPRESENTATIVE**

011 - 1009 (7-80)                    INSURED



# ESSEX INSURANCE COMPANY

## ADDITIONAL INSURED ENDORSEMENT

\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CT2392 | 07/23/2007 | ANC CONSTRUCTION, INC. 720 BUSINESS PARK BLVD #10 |

THIS ENDORSEMENT CHANGES THE POLICY.

SECTION II - WHO IS AN INSURED of the Commercial General Liability Form is amended to include:

Person or Entity:
Warwick Construction, Inc.
365 FM 1959, Suite A
Houston, TX 77034

Interest of the Above:
General Contractor

as an additional insured under this policy, but only as respects negligent acts or omissions of the Named Insured and only for occurrences, claims or coverage not otherwise excluded in the policy.

It is further agreed that where no coverage shall apply herein for the Named Insured, no coverage nor defense shall be afforded to the above-identified additional insured.

Moreover, it is agreed that no coverage shall be afforded to the above-identified additional insured for any "bodily injury," "personal injury," or "property damage" to any employee of the Named Insured or to any obligation of the additional insured to indemnify another because of damages arising out of such injury.

Additional Premium:

$100

_____ /
AUTHORIZED REPRESENTATIVE      DATE

M/E-009 (4/99)

INSURED



**ESSEX INSURANCE COMPANY**

# WAIVER OF SUBROGATION

\* *Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CT2392 | 07/23/2007 | ANC CONSTRUCTION, INC.<br>720 BUSINESS PARK BLVD #10 |

**THIS ENDORSEMENT CHANGES THE POLICY.**

ADDITIONAL PREMIUM $: 150

We agree that in consideration of the additional premium charged, the Right of Subrogation Clause contained in this policy is hereby waived as respects the following persons or entities:

Warwick Construction, Inc.
365 FM 1959, Suite A
Houston, TX 77034

There have been no know losses

This endorsement applies only to those persons or entities listed in the foregoing paragraph. We agree with you that written contracts will exist between you and the so noted persons or entities wherein you have agreed to furnish this waiver.

_____  /
AUTHORIZED REPRESENTATIVE        DATE

M/E-241 (4/99)                    INSURED



# ESSEX INSURANCE COMPANY

**MARKEL**

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number  3CT2392

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (other than Products/Completed Operations) | $ | 2,000,000 |
| Products/Completed Operations Aggregate Limit | $ | 1,000,000 |
| Personal and Advertising Injury Limit | $ | 1,000,000 |
| Each Occurrence Limit | $ | 1,000,000 |
| Damage to Rented Premises | $ 50,000 | Each Occurrence |
| Medical Expense Limit | $ 1,000 | Any One Person |

### BUSINESS DESCRIPTION AND LOCATION OF PREMISES COVERED BY THIS POLICY

Form of business:
☐ Individual   ☐ Joint Venture   ☐ Partnership   ☒ Organization (other than Partnership or Joint Venture)

Location of all premises you own, rent or occupy:

| | | | | |
|---|---|---|---|---|
| 1 | 720 Business Park Blvd #10 | Winter Garden | FL | 34787 |
| 1 | 4711 N Australian Ave | Magnolia Park | FL | 33407 |

### PREMIUM

| Code No. Classification | Rating Basis | *Premium Basis | Other Basis | Rate PR/Co | All Other | Advance Premium Pr/Co | All Other |
|---|---|---|---|---|---|---|---|
| 1  91580  Other<br>CONTRACTORS - EXECUTIVE SUPERVISORS OR EXECUTIVE SUPERINTENDENTS | 3,133,320 | Sales | | Included | 20 | $Included | $ 62,666.00 MP |
| 1  49950  Other<br>ADDITIONAL INTEREST PREMIUM | 4 | | Each | Included | 125 | Included | 500.00 |
| 1  49950  Other<br>Waiver of Subrogation | 1 | | | Included | 150 | Included | 150.00 |
| 1  49950  Other<br>ADDITIONAL INTEREST PREMIUM | 1 | | Each | Included | 100 | Included | 100.00 |

Rating Basis identified with a "*" is per 1000 of Selected Basis

**TOTAL ADVANCE PREMIUM** $ 63,416.00

### FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)

Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:

011-1009(07-80),ME-009(04-99),ME-241(04-99)

011-1054(10-03), ME-011(01-07), ME-002(01-07), ME-043(01-05), ME-051(04-99)

ME-143(04-09), CG 00 01(10-01), CG 21 69(01-02)

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMERCIAL LIABILITY DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

011-1061 (8-02)                                    INSURED

10/10/2007 03:47 PM 67201_27027

**MARKEL**

**ESSEX INSURANCE COMPANY**

**ENDORSEMENT**

#4

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have same inception date.*

| ATTACHED TO AND FORMING<br>PART OF POLICY NO. | \*EFFECTIVE DATE<br>OF ENDORSEMENT | \*ISSUED TO<br>ANC CONSTRUCTION, INC. |
|---|---|---|
| 3CT2392 | 07/23/2007 | 720 BUSINESS PARK BLVD #10 |

In consideration of the Additioanl Premium, It is understood and agreed
that the Additional Insured & Waiver of Rights is added for Warwick
Construction Inc. per attached Forms ME-009- Additional Insured
Endorsement and ME-241 - Waiver of Subrogation


Additional Premium - $250
Surplus Lines Tax - $12.50
Policy Fee - $.25
Asst Fee - $2.50
Total Additional Premium - $265.25


ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.



SURPLUS LINES AGENT'S NAME:
SURPLUS LINES AGENT'S ADDRESS:

SURPLUS LINES AGENT'S LICENSE#:
PRODUCING AGENT'S NAME:
PRODUCING AGENT'S ADDRESS:

ANDRETH PACCARD
1131 S. CORPORATE BLVD
SUITE 303
ORLANDO FL 32817
A289459
JAMIE BUTORNER
3714 HANSEL AVE

ORLANDO, FL 32856

"THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS
INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA
INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLI-
GATION OF AN INSOLVENT UNLICENSED INSURER."



Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions,
agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

*In Witness Whereof,* the Company has caused this en-
dorsement to be signed by a duly authorized represen-
tative of the Company

Gresham & Associates
PO Box 677219
Orlando, FL 32867
CB/DD

*Andrew H Pocard*
AUTHORIZED REPRESENTATIVE

011 - 1009 (7-80)                    INSURED

09/17/2007 10:13 AM 67201_26476

**MARKEL**

## ESSEX INSURANCE COMPANY

## ENDORSEMENT

3

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CT2392 | 06/07/2007 | ANC CONSTRUCTION, INC.<br>720 BUSINESS PARK BLVD #10 |

IT IS UNDERSTOOD AND AGREED THAT THE EXPOSURE FOR CLASS CODE 91580 IS INCREASED DUE TO PRIOR TERM AUDIT FROM $1,000,000 TO $3,133,320 PER ATTACHED REVISED FORM 011-1061

| | |
|---|---|
| PREMIUM CHARGE | $32466 |
| SURPLUS LINES TAX | $1623.30 |
| POLICY FEE | $32.47 |
| CAT ASSEMENT FUND | $324.66 |
| TOTAL PREMIUM | $34446.43 |

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

SURPLUS LINES AGENT'S NAME:
SURPLUS LINES AGENT'S ADDRESS:

ANDREW H PACKARD
11315 S CORPORATE BLVD
SUITE 300
ORLANDO FL 32817

SURPLUS LINES AGENT'S LICENSE #:
PRODUCING AGENT'S NAME:
PRODUCING AGENT'S ADDRESS:

A298269
JANIE BUCKNER
5639 HANSEL AVE
ORLANDO FL 32858

"THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLI-GATION OF AN INSOLVENT UNLICENSED INSURER."

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company

Andrew H Packard
AUTHORIZED REPRESENTATIVE

011 - 1009 (7-80)                        INSURED

09/17/2007 10:13 AM 67201_26475



**ESSEX INSURANCE COMPANY**

MARKEL

### ENDORSEMENT

2

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CT2392 | 06/07/2007 | ANC CONSTRUCTION, INC. 720 BUSINESS PARK BLVD #10 |

IT IS UNDERSTOOD AND AGREED THAT ENDORSEMENT#2 IS AMENDING
ENDORSEMENT#1 TO REMOVE THE FOLLOWING FORMS M/E001 (4/98), M/E091,
CG2177 & CG2187 PER ATTACHED REVISED 011-1061-COMMERCIAL GENERAL
LIABILITY COVERAGE PART SUPPLEMENTAL DECLARATIONS

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

SURPLUS LINES AGENT'S NAME:  ANDREW H. PACKARD
SURPLUS LINES AGENT'S ADDRESS:  11315 S. CORPORATE BLVD.
SUITE 100
ORLANDO, FL 32817

SURPLUS LINES AGENT'S LICENSE #:
PRODUCING AGENT'S NAME:  SAMLE BUCKNER
PRODUCING AGENT'S ADDRESS:  3611 HANSEL AVE
ORLANDO, FL 32806

*THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS
INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA
INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLI-
GATION OF AN INSOLVENT UNLICENSED INSURER.*

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions,
agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

*In Witness Whereof,* the Company has caused this en-
dorsement to be signed by a duly authorized represen-
tative of the Company

Andrew H Packard
AUTHORIZED REPRESENTATIVE

011 - 1009 (7-80)          INSURED

 **ESSEX INSURANCE COMPANY**

MARKEL

**ENDORSEMENT**

3

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CT2392 | 06/07/2007 | ANC CONSTRUCTION, INC. 720 BUSINESS PARK BLVD #10 |

IT IS UNDERSTOOD AND AGREED THAT THE EXPOSURE FOR CLASS CODE 91580 IS INCREASED DUE TO PRIOR TERM AUDIT FROM $1,000,000 TO $3,133,320 PER ATTACHED REVISED FORM 011-1061

PREMIUM CHARGE      $32466
SURPLUS LINES TAX  $1623.30
POLICY FEE              $32.47
CAT ASSEMENT FUND  $324.66
TOTAL PREMIUM        $34446.43

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company

AUTHORIZED REPRESENTATIVE

011 - 1009 (7-80)        Agent Copy

**ESSEX INSURANCE COMPANY**

MARKEL

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number 3CT2392

### LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (other than Products/Completed Operations) $ | 2,000,000 |
| Products/Completed Operations Aggregate Limit $ | 1,000,000 |
| Personal and Advertising Injury Limit $ | 1,000,000 |
| Each Occurrence Limit $ | 1,000,000 |
| Damage to Rented Premises $ | 50,000 Each Occurrence |
| Medical Expense Limit $ | 1,000 Any One Person |

### BUSINESS DESCRIPTION AND LOCATION OF PREMISES COVERED BY THIS POLICY

Form of business:
☐ Individual   ☐ Joint Venture   ☐ Partnership   ☒ Organization (other than Partnership or Joint Venture)

Location of all premises you own, rent or occupy:

| | | | | |
|---|---|---|---|---|
| 1 | 720 BUSINESS PARK BLVD #10 | WINTER GARDEN | FL | 34787 |
| 2 | 4711 N AUSTRALIAN AVE | MANGONIA PARK | FL | 33407 |

### PREMIUM

| Code No. Classification | Rating Basis | *Premium Basis | Other Basis | Rate PR/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|---|
| 1  91580  Other | | 3,133,320 | SALES | INCLUDED | 20 | $INCLUDED | $ 62,666.00 MP |
| CONTRACTORS - EXECUTIVE SUPERVISORS OR EXECUTIVE SUPERINTENDENTS | | | | | | | |
| 1  49950  Other | | 4 | EACH | INCLUDED | 125 | INCLUDED | 500.00 |
| ADDITIONAL INTEREST PREMIUM | | | | | | | |

Rating Basis identified with a "*" is per 1000 of Selected Basis

**TOTAL ADVANCE PREMIUM** $ 63,166.00

### FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)

Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:

011-1009(07-80)

011-1054 (10-03), ME-001 (01-07), ME-002 (01-07), ME-009(04-99), ME-043 (01-05), ME-048 (04-99), ME-051 (04-99), ME-143(04-99),CG 00 01 (10-01),CG 21 69 (01-02),

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMERCIAL LIABILITY DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

011-1061 (8-02)                                     Agent Copy



**ESSEX INSURANCE COMPANY**

**ENDORSEMENT**

2

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO ANC CONSTRUCTION, INC. |
|---|---|---|
| 3CT2392 | 06/07/2007 | 720 BUSINESS PARK BLVD #10 |

IT IS UNDERSTOOD AND AGREED THAT ENDORSEMENT#2 IS AMENDING ENDORSEMENT#1 TO REMOVE THE FOLLOWING FORMS M/E001 (4/98), M/E091, CG2177 & CG2187 PER ATTACHED REVISED 011-1061-COMMERCIAL GENERAL LIABILITY COVERAGE PART SUPPLEMENTAL DECLARATIONS

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company

AUTHORIZED REPRESENTATIVE

011 - 1009 (7-80)                    INSURED

**MARKEL**   **ESSEX INSURANCE COMPANY**

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number 3CT2392

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (other than Products/Completed Operations) | $ | 2,000,000 |
| Products/Completed Operations Aggregate Limit | $ | 1,000,000 |
| Personal and Advertising Injury Limit | $ | 1,000,000 |
| Each Occurrence Limit | $ 1,000,000 | |
| Damage to Rented Premises | $ | 50,000 Each Occurrence |
| Medical Expense Limit | $ | 1,000 Any One Person |

### BUSINESS DESCRIPTION AND LOCATION OF PREMISES COVERED BY THIS POLICY

Form of business:
☐ Individual   ☐ Joint Venture   ☐ Partnership   ☒ Organization (other than Partnership or Joint Venture)

Location of all premises you own, rent or occupy:

| | | | | |
|---|---|---|---|---|
| 1 | 720 BUSINESS PARK BLVD #10 | WINTER GARDEN | FL | 34787 |
| 2 | 4711 N AUSTRALIAN AVE | MANGONIA PARK | FL | 33407 |

### PREMIUM

| Code No. Classification | Rating Basis | *Premium Basis | Other Basis | Rate PR/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|---|
| 1  91580  Other | | 1,000,000 SALES | | INCLUDED | 20 | $INCLUDED | $ 30,200.00 MP |
| CONTRACTORS - EXECUTIVE SUPERVISORS OR EXECUTIVE SUPERINTENDENTS | | | | | | | |
| 1  49950  Other | 4 | | EACH | INCLUDED | 125 | INCLUDED | 500.00 |
| ADDITIONAL INTEREST | | | | | | | |

Rating Basis Identified with a "*" is per 1000 of Selected Basis

| | |
|---|---|
| TOTAL ADVANCE PREMIUM | $ 30,700.00 |

### FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)

Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:
011-1009(07-80)
011-1054 (10-03), ME-001 (01-07), ME-002 (01-07), ME-009(04-99), ME-043 (01-05), ME-048 (04-99), ME-051 (04-99)
ME-143(04-99),CG 00 01 (10-01),CG 21 69 (01-02),

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMERCIAL LIABILITY DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

011-1051 (8-02)                                    INSURED

08/02/2007 11:07 AM 67201_25714

**ESSEX INSURANCE COMPANY**

**MARKEL**

### ENDORSEMENT

1

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have same inception date.*

| ATTACHED TO AND FORMING<br>PART OF POLICY NO. | \*EFFECTIVE DATE<br>OF ENDORSEMENT | \*\*ISSUED TO |
|---|---|---|
| 3CT2392 | 06/07/2007 | ANC CONSTRUCTION, INC.<br>720 BUSINESS PARK BLVD #10 |

IT IS UNDERSTOOD AND AGREED THAT THE FOLLOWING FORMS ARE HEREBY DELETED
FROM THIS POLICY:

   M/E001 (4/98), M/E091, CG2177 & CG2187

IT IS FUTHER UNDERSTOOD AND AGREED THAT THE MEDICAL EXPENSE LIMIT IS
CORRECTED TO READ $1,000 ANY ONE PERSON PER ATTACHED REVISED FORM
011-1061-COMMERICAL GENERAL LIABILITY COVERAGE PART SUPPLEMENTAL
DECLARATIONS.
\n

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company

Andrew H Pollard
AUTHORIZED REPRESENTATIVE

011 - 1009 (7-80)                    INSURED

 **ESSEX INSURANCE COMPANY**

## ENDORSEMENT
1

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | \*EFFECTIVE DATE OF ENDORSEMENT | \*ISSUED TO |
|---|---|---|
| 3CT2392 | 06/07/2007 | ANC CONSTRUCTION, INC. 720 BUSINESS PARK BLVD #10 |

IT IS UNDERSTOOD AND AGREED THAT THE FOLLOWING FORMS ARE HEREBY DELETED FROM THIS POLICY:

    M/E001 (4/98), M/E091, CG2177 & CG2187

IT IS FUTHER UNDERSTOOD AND AGREED THAT THE MEDICAL EXPENSE LIMIT IS CORRECTED TO READ $1,000 ANY ONE PERSON PER ATTACHED REVISED FORM 011-1061-COMMERICAL GENERAL LIABILITY COVERAGE PART SUPPLEMENTAL DECLARATIONS.
\n

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company

AUTHORIZED REPRESENTATIVE

011 - 1009 (7-80)                    INSURED

 **ESSEX INSURANCE COMPANY**

**MARKEL**

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number  3CT2392

### LIMITS OF INSURANCE

General Aggregate Limit (other than Products/Completed Operations) $_____ 2,000,000

Products/Completed Operations Aggregate Limit         $_____ 1,000,000

Personal and Advertising Injury Limit                 $_____ 1,000,000

Each Occurrence Limit                                 $_____1,000,000_____

Damage to Rented Premises                             $_____50,000 Each Occurrence

Medical Expense Limit                                 $_____1,000 Any One Person

### BUSINESS DESCRIPTION AND LOCATION OF PREMISES COVERED BY THIS POLICY

Form of business:

☐ Individual    ☐ Joint Venture    ☐ Partnership    ☒ Organization (other than Partnership or Joint Venture)

Location of all premises you own, rent or occupy:

| | | | | |
|---|---|---|---|---|
| 1 | 720 BUSINESS PARK BLVD #10 | WINTER GARDEN | FL | 34787 |
| 2 | 4711 N AUSTRALIAN AVE | MANGONIA PARK | FL | 33407 |

### PREMIUM

| Code No. Classification | Rating Basis | *Premium Basis | Other Basis | Rate PR/Co | All Other | Advance Premium Pr/Co | All Other |
|---|---|---|---|---|---|---|---|
| 1  91580 | Other | 1,000,000 | SALES | INCLUDED | 20 | $INCLUDED | $ 30,200.00 MP |
| CONTRACTORS - EXECUTIVE SUPERVISORS OR EXECUTIVE SUPERINTENDENTS | | | | | | | |
| 1  49950 | Other | 4 | EACH | INCLUDED | 125 | INCLUDED | 500.00 |
| ADDITIONAL INTEREST | | | | | | | |

Rating Basis Identified with a "*" is per 1000 of Selected Basis

TOTAL ADVANCE PREMIUM  $ 30,700.00

### FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)

Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:

011-1009(07-80)

ME-091(01-07),ME-143(04-99),CG 00 01 (10-01),CG 21 69 (01-02),CG 21 77 (11-02),CG 21 87 (01-07)

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMERCIAL LIABILITY DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

011-1061 (8-02)

INSURED

07/13/2007 02:18 PM 67201_25230



## ESSEX INSURANCE COMPANY

### COMMERCIAL LIABILITY DECLARATIONS

**Policy Number**
3CT2392

Renewal of Policy Number: 3CT2334

**Item 1. Named Insured and Mailing Address:**
ANC CONSTRUCTION, INC.
720 BUSINESS PARK BLVD #10
WINTER GARDEN, FL 34787

**Item 2. Policy Period**  From: 06/07/2007  To: 06/07/2007  Term: ANNUAL
12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

**Item 3.**  Retroactive Date: _____

**Item 4.**  Business Description: GENERAL CONTRACTOR

**Item 5.**  In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | Form No. and Edition Date | Premium |
|---|---|---|
| Commercial General Liability Coverage Part | CG0001 (10/01) | $ 30,700.00 |
| Professional Liability Coverage Part | SURPLUS LINES AGENT'S NAME: ANDREW H PACKARD — SURPLUS LINES AGENT'S ADDRESS: 1111 S CORPORATE BLVD SUITE 300 ORLANDO FL 32817 | $ |
| Policy Fee | | 35.00 |
| Inspection Fee | SURPLUS LINES AGENT'S LICENSE #: PRODUCING AGENT'S NAME: STEVEN C BURNS — 53 E MICHAEL ST | 100.00 |
| Surplus Lines Fee | PRODUCING AGENT'S ADDRESS: ORLANDO, FL 32804 | 1,541.75 |
| Service Fee | "THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS | 30.84 |
| FL HURRICANE CATASTROPHE FUND | INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER." | 308.35 |
| | | $ |
| | | $ |
| | | $ |

Audit Period Annual unless otherwise stated: _____  **Total** | $ 32,715.94

**Item 6.**  Forms and endorsements applicable to all Coverage Parts: 011-1063 (08-02)  SHOW NUMBERS

Agent Name and Address:
Agent Number: 01823

Program Code:
Underwriter Name:DD/AP

Countersigned _____  By  Andrew H Packard
   DATE

THIS COMMERCIAL LIABILITY DECLARATIONS AND THE SUPPLEMENTAL DECLARATIONS,TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

**INSURED**

011-1055 (5-05)

 **ESSEX INSURANCE COMPANY**

MARKEL®

### COMMERCIAL LIABILITY DECLARATIONS

**Policy Number**
3CT2392

Renewal of Policy Number   3CT2334

**Item 1. Named Insured and Mailing Address:**
ANC CONSTRUCTION, INC.
720 BUSINESS PARK BLVD #10
WINTER GARDEN, FL 34787

**Item 2.  Policy Period    From:** 06/07/2007        **To:** 06/07/2007        **Term:** ANNUAL

12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

**Item 3.    Retroactive Date:** _____

**Item 4.    Business Description:**  GENERAL  CONTRACTOR

**Item 5.    In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.**

This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | Form No. and Edition Date | Premium |
|---|---|---|
| Commercial General Liability Coverage Part | CG0001 (10/01) | $ 30,700.00 |
| Professional Liability Coverage Part | | $ |
| Policy Fee | | $      35.00 |
| Inspection Fee | | $     100.00 |
| Surplus Lines Fee | | $   1,541.75 |
| Service Fee | | $      30.84 |
| FL HURRICANE CATASTROPHE FUND | | $     308.35 |
| | | $ |
| | | $ |
| | | $ |

Audit Period Annual unless otherwise stated: _____        **Total** | $ 32,715.94

**Item 6.    Forms and endorsements applicable to all Coverage Parts:** 011-1061 (08-02)
SHOW NUMBERS

_____

Agent Name and Address:
Agent Number: 01823

Program Code:
Underwriter Name: DD/AP

Countersigned _____        **By** _____
                    **DATE**

THIS COMMERCIAL LIABILITY DECLARATIONS AND THE SUPPLEMENTAL DECLARATIONS,TOGETHER WITH THE COMMON POLICY CONDITIONS,
COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.
**INSURED**

011-1055 (5-06)



**ESSEX
INSURANCE
COMPANY**

**MARKEL®**

**INSURANCE
POLICY**

In consideration of the payment of the Premium, in reliance upon the statements made to the Company by application and subject to the terms set forth herein, the Company designated on the Declarations page (A Capital Stock Company), herein called the Company, AGREES with the Insured:

## COMMON POLICY CONDITIONS

All Coverage Parts Included in this policy are subject to the following conditions.

### A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed proof of mailing will be sufficient proof of notice.

### B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded.   The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent.   This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:
1. Make inspections and surveys at any time;
2. Give you reports on the conditions we find; and
3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections.  We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.

And we do not warrant that conditions:

1. Are safe or healthful; or
2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance   inspections,   surveys,   reports   or recommendations.

### E. PREMIUMS

The first Named Insured shown in the Declarations:
1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.
3. Premium shown in the Declarations was computed based on rates in effect at the time the policy was issued.  On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

### F. PREMIUMS, MINIMUM DEPOSIT AND AUDIT

All references in this policy to minimum and/or deposit premiums and premium audits is replaced by the following, as respects casualty:

Premium shown as advanced premium is both a deposit premium and a minimum premium for the policy term.  At the close of each audit period we will compute earned premium for that period.  If earned is more than advance premium then the amount by which it exceeds advance premium is due and payable on notice to you.  If earned is less, advance premium applies as the minimum premium with no return payable to you.

If this policy is cancelled the pro rata or short rate of the minimum and deposit premium will apply for the policy term, subject to an absolute minimum earned premium of 25% of the total advance premium, unless final audit develops greater than said 25%. If your business is a seasonable business, however, the minimum premium then becomes fully earned at the end of your season.

### G. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative.  Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

This Policy is not valid unless a Declarations Page and Coverage Form is attached.

## NUCLEAR ENERGY LIABILITY EXCLUSION

1.  The insurance does not apply:

    A.  Under any Liability Coverage, to "bodily injury" or "property damage:"

        (1)  With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2)  Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B.  Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C.  Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if

        (1)  The "nuclear material" (a) is at any "nuclear facility" owned by or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

        (2)  The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

        (3)  The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2.  As used in this endorsement

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material," "special nuclear material" or "by-product material."

    "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

    "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

    "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

    "Nuclear facility" means:
    (a)  Any "nuclear reactor;"
    (b)  Any building, premises or property owned, leased, loaned or used by or on behalf of the insured where "hazardous properties," "nuclear material" or "radioactive material" is used, processed or stored or has been discharged or dispersed therefrom;
    (c)  Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"
    (d)  Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
    (e)  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;" and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

    "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

    "Property damage" includes all forms of radioactive contamination of property.

011-1054 (Rev 10-03)

## SERVICE OF SUIT

It is agreed that in the event of the failure of this Company herein to pay any amount claimed to be due hereunder, this Company hereon, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon the Company's President, or his nominee, at 4521 Highwoods Parkway, Glen Allen, VA  23060-6148 and that in any suit instituted against any one of them upon this Policy, this Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named is authorized and directed to accept service of process on behalf of this Company in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that it or they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any state, territory or district of the United States of America, which makes provision therefor, this Company hereon hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney, upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## PRIVACY NOTICE

We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications or other forms; and/or
- Information about your transactions with us, our affiliates, or others; and/or
- Information we receive from a consumer reporting agency; and/or
- Information we receive from inspection reports.

We do not disclose any nonpublic personal information about our customers or former customers to anyone, except as permitted by law.

We may disclose nonpublic personal information about you to the following types of third parties:

- Financial service providers, such as insurance agents and/or brokers.

We may also disclose nonpublic personal information about you to non-affiliated third parties as permitted by law.

We restrict access to nonpublic personal information about you to those employees who need to know that information to provide products or services to you.  We maintain physical, electronic, and procedural safeguards that comply with federal standards to guard your nonpublic personal information.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

| _____ | _____ |
| Secretary | President |

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1982, 1983



**ESSEX INSURANCE COMPANY**

**MARKEL**

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number 3CT2392

| LIMITS OF INSURANCE | |
|---|---|
| General Aggregate Limit (other than Products/Completed Operations) $ | 2,000,000 |
| Products/Completed Operations Aggregate Limit $ | 1,000,000 |
| Personal and Advertising Injury Limit $ | 1,000,000 |
| Each Occurrence Limit $ | 1,000,000 |
| Damage to Rented Premises $ | 50,000 Each Occurrence |
| Medical Expense Limit $ | 5,000 Any One Person |

### BUSINESS DESCRIPTION AND LOCATION OF PREMISES COVERED BY THIS POLICY

Form of business:
☐ Individual   ☐ Joint Venture   ☐ Partnership   ☒ Organization (other than Partnership or Joint Venture)

Location of all premises you own, rent or occupy:

| | | | | |
|---|---|---|---|---|
| 1 | 720 BUSINESS PARK BLVD #10 | WINTER GARDEN | FL | 34787 |
| 2 | 4711 N AUSTRALIAN AVE | MANGONIA PARK | FL | 33407 |

### PREMIUM

| Code No. Classification | Rating Basis | *Premium Basis | Other Basis | Rate PR/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|---|
| 1  91580  Other | | 1,000,000  SALES | | INCLUDED | 20 | $INCLUDED | $ 30,200.00 MP |
| CONTRACTORS - EXECUTIVE SUPERVISORS OR EXECUTIVE SUPERINTENDENTS | | | | | | | |
| 1  49950  Other | | 4 | EACH | INCLUDED | 125 | INCLUDED | 500.00 |
| ADDITIONAL INTEREST | | | | | | | |

Rating Basis identified with a "*" is per 1000 of Selected Basis

**TOTAL ADVANCE PREMIUM** $ 30,700.00

### FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)

Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:
011-1054(10-03),ME-001(04-98),ME-001(01-07),ME-002(01-07),ME-009(04-99),ME-043(01-05),ME-048(04-99),ME-051(04-99)
ME-091(01-07),ME-143(04-99),CG 00 01 (10-01),CG 21 69 (01-02),CG 21 77 (11-02),CG 21 87 (01-07)

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMERCIAL LIABILITY DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

011-1051 (8-02)                               INSURED



**ESSEX INSURANCE COMPANY**

## COMBINATION ENDORSEMENT M/E-001

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *Attached to and Forming Part of Policy No. | *Effective Date of Endorsement | *Issued to |
|---|---|---|
| 3CT2392 | 06/07/2007 | ANC CONSTRUCTION, INC.<br>720 BUSINESS PARK BLVD #10 |

**THIS ENDORSEMENT CHANGES THE POLICY.**

1.  **MEDICAL PAYMENTS:**
    This insurance does not apply to Coverage C. "Medical Payments" (Section I), Commercial General Liability Coverage Form, unless a limit/amount is shown on the Supplemental Declarations.

2.  **LIQUOR LIABILITY EXCLUSION AMENDED:**
    Liquor Liability under 2. c. Exclusions, Commercial General Liability Coverage Form, Section I - Coverage, is replaced by the following and applies throughout this policy:
    This insurance does not apply to any claim, suit, cost or expense arising out of
    (1) causing or contributing to the intoxication of any person and/or
    (2) furnishing alcoholic beverages to anyone under legal drinking age or under the influence of alcohol and/or
    (3) any statute, ordinance or regulation relating to sales, gift, distribution or use of alcoholic beverage and/or
    (4) any act or omission by any Insured, any employee of any Insured, patrons, members, associates, volunteers or any other persons respects providing or failing to provide transportation, detaining or failing to detain any person, or any act of assuming or not assuming responsibility for the well being, supervision or care of any person allegedly under or suspected to be under the influence of alcohol. This exclusion applies to the entire policy, and where there is no coverage there is no duty to defend.

3.  **EMPLOYER'S LIABILITY EXCLUSION AMENDED:**
    Employer's Liability under 2. e. Exclusions, Commercial General Liability Coverage Form, Section I. - Coverage, is replaced by the following and applies throughout this policy:
    This insurance does not apply to any claim, suit, cost or expense arising out of "bodily injury" to
    (1) any employee of a Named Insured arising out of and in the course of employment or while performing duties related to the conduct of the Insured's business, or
    (2) the spouse, child, parent, brother, sister or relative of that employee as a consequence of (1).

    This exclusion applies whether an Insured may be liable as an employer or in any other capacity, and/or to any obligation to share damages with or repay someone else who must pay damages because of the injury, as well as liability assumed under any "Insured Contract." Wherever the word employee appears above, it shall also mean any member, associate, leased worker, temporary worker or any person or persons loaned to or volunteering services to you. This exclusion applies to the entire policy, and where there is no coverage there is no duty to defend.

4.  **"AUTO" EXCLUSION AMENDED:**
    With respect to any "auto" 2g. Exclusions, Commercial General Liability Coverage Form, Section I - Coverages, the first paragraph is replaced by the following, and applies throughout this policy: This insurance does not apply to any claim, suit, cost or expense arising out of, caused by or contributed to by the ownership, non-ownership, maintenance, use or entrustment to others of any "auto." Use includes operation and "loading and unloading." This exclusion applies to the entire policy and where there is no coverage, there is no duty to defend.

5.  **EXCLUSIONS**
    Where there is no coverage under this policy, there is no duty to defend. This insurance does not apply to any claim, suit, cost or expense arising out of:

A.  POLLUTION:
    (1)     "Bodily injury," "personal injury," "property damage" or any other type injury or expense;
    (2)     damages for the devaluation of property or for the taking, use or acquisition or interference with the
            rights of others in or on property or air space;
    (3)     any demand, order, governmental direction or request or any private party or citizen action that any
            Insured or any others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize
            pollutants, including any fines and/or penalties;
    (4)     any litigation or administrative procedure in which any Insured or others may be involved as a party;
    as a result of actual, alleged or threatened discharge, dispersal, release or escape of pollutants, or
    placement of pollutants, into or upon land, premises, buildings, the atmosphere, or any water course or
    body of water, aquifer or ground water, whether sudden, accidental or gradual in nature or not. Pollutants
    mean any solid, liquid, gaseous, thermal, acoustic, electric, magnetic, electromagnetic irritant or
    contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis,
    petroleums, chemicals or materials, and waste.  Waste includes, in addition to materials to be disposed of,
    materials to be recycled, reconditioned or reclaimed. All liability and expense arising out of or related to any
    form of pollution, caused intentionally or  otherwise, and whether or not any resulting injury, damage,
    devaluation, cost or expense is expected by any Insured or any other person or entity is excluded.

B.  ASBESTOS, LEAD, OR SILICA DUST:
    (1)     inhalation, ingestion, physical exposure to, absorption or actual or alleged presence of asbestos,
            silica dust, or lead, in any form, or toxic substances from same, and including but not limited to
            goods, products or structures containing same, and/or
    (2)     the existence of asbestos, silica dust or lead, in any form, in occupancy or construction, or the
            manufacture, sale, transportation, handling, storage, disposal, or removal of same, or goods or
            products containing same, and/or
    (3)     any supervision, instructions, recommendations, requests, warnings or advice given or which
            should have been given in regard to asbestos, silica dust and/or lead, and/or
    (4)     any costs, including but not limited to, abatement, mitigation, removal or disposal of asbestos, silica
            dust, lead, paint containing lead, plumbing solder, pipes and fixtures, soil or anything containing
            asbestos, silica dust or lead, in any form, and/or
    (5)     any obligation to share damages with or repay anyone else who must pay damages in connection
            with the above.

C.  PUNITIVE OR EXEMPLARY DAMAGE:
    Punitive or Exemplary Damages whether arising out of the acts of any Insured, any employee of any Insured
    or any other person. (Except this does not apply to punitive damages from wrongful death brought under
    Alabama's Wrongful Death Statute,)

D.  ASSAULT AND/OR BATTERY:
    Assault and/or Battery or out of any act or omission in connection with the prevention or suppression of
    such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons
    or any other person.

E.  HIRING AND/OR SUPERVISION:
    Charges or allegations of negligent hiring, training, placement or supervision.

F.  EMPLOYMENT RELATED PRACTICES:
    (1)     Refusal to employ or termination of employment, and/or
    (2)     discrimination, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment in
            any form, humiliation or other employment-related practices, policies, acts or omissions, and/or
    (3)     any type of consequential injury as a result of (1) and/or (2).

G.  ERRORS, OMISSIONS, ACTS, PROFESSIONAL LIABILITY, MALPRACTICE:
    Any type error, omission, act, rendering of or failure to render any type professional service, unless
    specifically endorsed onto this policy.

H.   ATHLETIC PARTICIPANTS:
"Bodily injury" or "personal injury" to any person while practicing for or participating in any event or function of a sporting or athletic nature.

I.   DISCRIMINATION:
Any and all causes of alleged or actual discrimination.

J.   CROSS SUITS:
Or caused by any Named Insured covered by this policy initiating causes of action or allegations against any other Insured covered by this policy.

K.   INDEPENDENT CONTRACTORS/SUBCONTRACTORS (Applies if you are a Contractor or Builder):
   (1)   "Bodily injury," "personal injury" or "property damage" caused by acts of independent Contractors/ subcontractors contracted by you or on your behalf unless you obtain Certificates of Insurance from them providing evidence of at least like coverage and limits as provided by this policy;
   (2)   nor does this insurance apply to "bodily injury," "personal injury" or "property damage" sustained by any independent contractor/subcontractor, or any employee, leased worker, temporary or volunteer help of same, unless the Named Insured or Employee of Named insured is on site, directly supervising the work of same at the time of injury or damage, and the Named Insured's actions, inactions or omissions are the direct cause of the injury or damage, and/or the injury or damage, is directly caused by an employee of the Named Insured.

L.   YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS:
Any actual or alleged failure, malfunction or inadequacy of, whether belonging to an insured or to others, computer hardware, including microprocessors (computer chips) whether a part of any computer system or not, computer application software, computer operating systems and related software, computer networks, any other computerized or electronic equipment or components, or any other products, and any services, data or functions that directly or indirectly use or rely upon in any manner any of the foregoing items, due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond dates.

This applies as well to any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you, or by an independent or subcontractor, to determine, rectify or test for any potential or actual problems in regard to the foregoing.

6.   ADDITIONAL CONDITION, LESSORS RISK ONLY:
If this policy includes a Lessors Risk Only classification, that premises, parking lot or land is written and priced on the basis that your tenant carries liability insurance. Your lease must require   commercial   tenant(s), except for office (only) occupancies, to carry General Liability insurance and name you as an additional insured. Failure to comply with this condition does not  void coverage under your policy, however, Limits of Liability will be reduced and apply as follows:   Sublimit of Liability

Each occurrence limit:  $50,000 Combined Single Limit  -  Aggregate limit:   $50,000 Combined Single Limit

The sublimit shown above is the most we will pay for all damages including investigation and defense because of injury arising out of any one "occurrence." The aggregate limit is the most we will pay for all claims, including investigation and defense, under this policy.  If our limits are tendered or exhausted under this sublimit, we will not defend or continue to defend in any suit.

M/E-001 (Rev. 4/98)                    Page 3 of 3

 **ESSEX INSURANCE COMPANY**

## COMBINATION GENERAL ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CT2392 | 06/07/2007 | ANC CONSTRUCTION, INC. 720 BUSINESS PARK BLVD #10 |

THIS ENDORSEMENT AMENDS THE LIABILITY COVERAGE FORM
OR COVERAGE PART (hereinafter referred to as Coverage Form), AND APPLIES TO THE ENTIRE POLICY.

1. Coverage under this insurance is limited to operations described under 'business description' and/or 'classification' on the declarations' pages of policy.

2. This insurance does not apply to Part 4 of Section II in the Coverage Form - Who is an insured.

3. Supplementary Payments-Coverages A & B - in the Coverage Form is amended to read with respect to 1. last paragraph: These payments will not reduce the limits of insurance, except with respect to attorneys' fees incurred by us in defense of an indemnitee of the insured, and this applies throughout Supplementary Payments-Coverages A & B - section of this policy.

4. Insured contract to which this insurance applies means any written (A) - Lease of premises excluding indemnification to another for damage by fire to premises while rented to you or temporarily occupied by you and/or (B) - Easement agreement except in connection with construction or demolition operations on or adjacent to a railroad, and/or (C) - Indemnification of a municipality as required by ordinance, except in connection with work for the municipality, and/or (D) - Sidetrack agreement or any easement or license agreement in connection with vehicle or pedestrian private railroad crossing at grade, and/or (E) - elevator maintenance agreement.

5. This insurance does not apply to claims arising out of breach of contract, whether written or oral, express or implied, implied-in-law, or implied - in fact contract.

6. Wording in Coverage Form, 2. Exclusions, Section I - Coverages, e. Employer's Liability, is replaced by the following and applies throughout this policy:
   This insurance does not apply to liability for "Bodily Injury" to:
   (A) an "employee" of any insured arising out of and in the course of employment or while performing duties related to the conduct of an insured's business; or (B) any injury or damage to any other person including but not limited to spouse, child, parent, brother, sister or relative of the "employee" as a consequence of (A). This exclusion applies whether an insured may be liable as an employer or in any other capacity and applies to any obligation to share damages with or repay someone else who must pay damages because of the injury, as well as liability assumed under any "Insured Contract." Wherever the word "employee" appears above, it shall also mean any member, associate, co-employee, leased worker, temporary worker, union worker, volunteer, or any person or persons loaned to or volunteering services to you.

7. Fines, penalties, and punitive or exemplary damages are not covered under this policy nor are any expenses nor any obligation to share such damages or repay another. However, this does not apply to Punitive Damages from Wrongful Death brought under Alabama's Wrongful Death Statute.

8. Professional Liability, Errors, Omission, Negligent Acts, Malpractice and/or acts of any type including rendering or failure to render any type professional service is not covered under this policy, unless such coverage is specifically endorsed onto the policy.

9. Wording in Coverage Form, 2. Exclusions, Section I - Coverages, c. Liquor Liability, last paragraph, is deleted. Item (4) is added as follows: (4) any act or omission by any insured, any employee of any insured, patrons, members, associates, volunteers or any other persons respects providing or failing to provide transportation, detaining or failing to detain any person, or any act of assuming or not assuming responsibility for the well being, supervision or care of any person allegedly under or suspected to be under the influence of alcohol.

ME-001 (01/07)

Page 1 of 3

10. This insurance does not apply to 'bodily injury', 'property damage', 'personal injury', 'advertising injury' or any injury, loss, or damages, including consequential injury, loss or damage, arising out of, caused by or contributed to:

   a. by ownership, non-ownership, maintenance, use, or entrustment to others of any 'auto', aircraft, watercraft, snowmobile, all terrain vehicle (ATV), or motorcycle. Use includes operation and 'loading' and 'unloading'; or

   b. from Employment-Related Practices, regardless of allegations, including but not limited to:

      (1) refusal to employ, or termination of employment; or
      (2) discrimination, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment in any form, humiliation, or other employment-related practices, policies, acts or omissions; or

   c. as a result of discrimination of any kind, actual or alleged; or

   d. as a result of and/or arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any insured, insured's employees, patrons or any other person(s); or

   e. as a result of alleged negligence or other wrongdoing in the hiring, training, placement, supervision, or monitoring of others by insured; or

   f. as a result of any person practicing for and/or participating in any contest, event or function of a sporting or athletic nature; or

   g. by any animal, regardless whether owned by you, in your care, or on your premises; or

   h. by any named insured covered by this policy initiating causes of action or allegations against any other insured covered by this policy; or

   i. from intellectual property, proprietary property rights, patent, trademark and/or copyright infringement, misappropriation of trade secret and/or practice, piracy, fraudulent concealment, unjust enrichment, misrepresentation or negligent misrepresentation; and/or deceptive, false, fraudulent, misleading, unfair, unlawful or untrue business act or practice with respect to advertising; or

   j. from any action or omission that violates or is alleged to violate the Telephone Consumer Protection Act (TCPA), the CAN-SPAM Act of 2003, including any amendment of or addition to such laws, or any analogous local, state or federal statute, ordinance or regulation, other than the foregoing, that prohibits or limits sending, transmitting, communicating, solicitation, or distribution of material or information using e-mails, telephone, telephone facsimile machine, computer or other electronic device; or

   k. from Internet exposures, world-wide web, cyber system(s), computer hardware or software, electronic data, e-mail, unauthorized use, loss/misuse of data, or from loss of, alteration of, failure, error, negligence, malfunction, inadequacy of, damage to or a reduction in functionality, availability or operation of a computer system, network(s), program(s), software, data, information repository, microchip(s), integrated circuit or similar device in computer equipment or non-computer equipment, regardless of cause, and/or resultant loss of income, whether property of the insured or any other; or

   l. from criminal acts, fraudulent, dishonest or malicious acts or omissions from any insured, any employee of any insured or anyone for whom you may be held liable; or

11. If this policy includes a Lessors Risk Only (LRO) classification, it is written and priced as such only on condition that your lease or agreement with tenant(s) requires (commercial) tenant(s) carry Commercial General Liability coverage with limits at least equal to the limits of this policy, names you as an additional insured on their policy, and you require and secure a certificate of insurance confirming same. Parking areas or other land of premises leased to tenant(s) must also be covered by their insurance, or separately submitted and priced hereunder. Failure to comply with this condition does not void your coverage, however, limits of liability hereunder will be reduced and apply as a 'sublimit' of liability, being a Combined Single Limit, $50,000 each occurrence and in the Aggregate, including loss adjustment expenses and defense. The sublimit would be the most payable for all damages arising out of any one occurrence, and the most payable for all claims under this policy, including investigation and defense. If such sublimits were tendered or exhausted, we would not defend or continue to defend in any suit.

12. Where there is no coverage under this policy, there is no duty to defend.

ME-001 (01/07)                                                            Page 3 of 3

 **ESSEX INSURANCE COMPANY**

## ADDITIONAL CONDITIONS ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CT2392 | 06/07/2007 | ANC CONSTRUCTION, INC.<br>720 BUSINESS PARK BLVD #10 |

THIS ENDORSEMENT AMENDS THE LIABILITY COVERAGE FORM OR COVERAGE PART (hereinafter referred to as Coverage Form), AND APPLIES TO THE ENTIRE POLICY.

This insurance does not apply to 'bodily injury', 'property damage', 'personal injury', 'advertising injury' or any injury, loss, or damages, including consequential injury, loss or damage, arising out of, caused by or contributed to or as a result of:

1.

    (A) 'movement of land or earth' regardless whether emanating from, aggravated by, or attributable to any operations performed by or on behalf of any insured, and regardless whether first manifestation of same occurs during the policy period or prior or subsequent thereto. 'Movement of land or earth' includes instability, subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, rising, tilting, bulging, cracking, mud flow, mudslide, earthquake, shrinking or expansion of ground, slabs, footings, foundations, walls, roofs, floors, ceilings or any other real property or part thereof; or

    (B) pollution, contamination, contaminants, irritants, including but not limited to injuries alleged as a result of actual, alleged or threatened exposure to and/or absorption of and/or inhalation of, and/or ingestion of, contact with, existence of, presence of, and environmental impairment, including but not limited to damage to natural habitats and species. Expenses and any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences or actions arising or alleged to have arisen out of same are not covered. All liability and expense arising out of or related to any form of actual or alleged pollution, and/or contamination, and/or environmental impairment, whether intentional or otherwise, and whether or not any resulting injury, damage, devaluation, cost or expense is expected by any insured or any other person or entity, is excluded throughout this policy. This includes but is not limited to devaluation of property, or for taking, use or acquisition or interference with the rights of others in or on property or air space.

    Any loss, cost, expense, fines and/or penalties arising out of any
        (a) request, demand, order, statutory or regulatory requirement, governmental authority or directive or that of any private party or citizen action that any insured, or others, test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess same the effects of pollutants, and/or contaminants and/or irritants, and/or environmental impairment; and/or
        (b) litigation or administrative procedure in which any insured or others may be involved as a party as a result of actual, alleged, or threatened, discharge, dispersal, seepage, migration, release, escape, or placement of pollutants and/or contaminants and/or environmental impairments into or upon land, premises, buildings, the atmosphere, any water course, body of water, aquifer, or ground water, whether sudden, accidental, deliberate, or gradual in nature or not, and regardless of when, are not covered.

    Pollutants and/or contaminants and/or irritants mean any solid, liquid, gaseous, thermal, acoustic, electrical, or magnetic irritant, contaminant, or pollutant, including but not limited to smoke, fumes, heat, soot, vapor, emissions, fibers, radiation, acids, alkalis, fuels, petroleums, lubricants, operating fluids, pesticides, fertilizers, paints, dust, toxic dust, spores, chemicals and waste. Waste includes but is not limited to medical waste and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed.

ME-002 (01/07)

This wording supersedes and replaces all other wording on 'Pollution' in the Coverage Form attached to this policy; or

(C) asbestos, lead, silica dust, dust and/or toxic dust, fungi, bacteria, organic pathogens, bio-organic growth and/or systemic chemical poisoning
    (a) whether arising out of actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, presence of, discharge, dispersal, seepage, migration, infiltration, infestation, release, escape, growth, production or reproduction of or toxic substances from asbestos, lead, silica dust, dust and/or toxic dust, fungi, bacteria, organic pathogens, bio-organic growth and/or systemic chemical poisoning. This applies regardless of source, including but not limited to, from any goods, products or structures containing same, existence of same in any form, in occupancy or construction, manufacture, sale, transportation, handling, storage, disposal or removal of same; and
    (b) regardless of supervision, instructions, recommendations, requests, warnings or advice given or which should have been given, as well as any costs, including but not limited to abatement, mitigation, removal, containment, treatment, detoxification, neutralization, or disposal of same, or in any way respond to assess the effects by any insured or by any other person or entity.
Coverage does not apply to any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way, responding to, or assessing the effects by any insured or by any other person or entity.

"Fungi" hereunder means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi. However, this exclusion does not apply to any "fungi" or bacteria that are on, or are contained in, a good or product intended for bodily consumption.

(D) If contractors or subcontractors are used, it is a condition of coverage that you use only those that are insured, and carry at a minimum Commercial General Liability coverage with limits at least equal to the limits of this policy, name you as an additional insured on their policy and you require and secure certificates of insurance confirming same. Failure to comply with this condition does not void your coverage, however, limits of liability hereunder will be reduced and apply as a 'sublimit' of liability, being a Combined Single Limit, $50,000 each occurrence and in the Aggregate, including loss adjustment expenses and defense.

The sublimit would be the most payable for all damages arising out of any one occurrence, and the most payable for all claims under this policy, including investigation and defense. If such sublimits were tendered or exhausted, we would not defend or continue to defend in any suit.

Further, there is no coverage under this policy for 'bodily injury', 'personal injury' or 'property damage' sustained by any contractor, self-employed contractor, and/or subcontractor, or any employee, leased worker, temporary worker or volunteer help of same.

ME-002 (01/07)

Page 2 of 2

 **ESSEX INSURANCE COMPANY**

**MARKEL**

## ADDITIONAL INSURED ENDORSEMENT

\* *Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CT2392 | 06/07/2007 | ANC CONSTRUCTION, INC.<br>720 BUSINESS PARK BLVD #10 |

**THIS ENDORSEMENT CHANGES THE POLICY.**

SECTION II - WHO IS AN INSURED of the Commercial General Liability Form is amended to include:
LEASED EQUIPMENT PERFORMING A JOB
Person or Entity:
DIRECT CAPITAL CORP.AND IT'S ASSIGNEES 155 COMMERCE WAY-PORTSMOUTH,NH
03801
SCOTT & SUSAN MCELROY 7549 COURTYARD RUN EAST-BOCA RATON,FL 33433
COURTYARDS AT BOCA 7655 COURTYARD RUN WEST- BOCA, FL 33433
CAROTEX CONSTRUCTION,INC. 10239 NW 53RD ST -SUNRISE,FL 33351
Interest of the Above:

as an additional insured under this policy, but only as respects negligent acts or omissions of the Named Insured and only for occurrences, claims or coverage not otherwise excluded in the policy.

It is further agreed that where no coverage shall apply herein for the Named Insured, no coverage nor defense shall be afforded to the above-identified additional insured.

Moreover, it is agreed that no coverage shall be afforded to the above-identified additional insured for any "bodily injury," "personal injury," or "property damage" to any employee of the Named Insured or to any obligation of the additional insured to indemnify another because of damages arising out of such injury.

Additional Premium:

$500.00

_____  /  _____
AUTHORIZED REPRESENTATIVE      DATE

M/E-009 (4/99)

INSURED

 **ESSEX INSURANCE COMPANY**

**MARKEL®**

# COMBINATION CONTRACTORS ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CT2392 | 06/07/2007 | ANC CONSTRUCTION, INC. 720 BUSINESS PARK BLVD #10 |

THIS ENDORSEMENT AMENDS THE LIABILITY COVERAGE FORM OR COVERAGE PART
(hereinafter referred to as Coverage Form), AND APPLIES TO THE ENTIRE POLICY.

1. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions; However, the following is not an "occurrence" under this policy:
   a. Actual and/or alleged defective work; and/or
   b. Actual and/or alleged defective workmanship; and/or
   c. Actual and/or alleged defective construction; and/or
   d. Actual and/or alleged negligent construction.

2. Under the Coverage Form Section I - Coverages, 2. Exclusions, the last paragraph of Exclusions J. Damage to Property, and I. Damage to Your Work, are deleted in their entirely.

3. This insurance does not apply to 'bodily injury', 'property damage', 'personal injury', 'advertising injury', or any injury, loss or damages, including consequential injury, loss or damage, arising directly or indirectly out of, caused by or contributed to, or resulting from

   a. claims of incremental, continuous or progressive injury or damage which began to occur, is occurring, was occurring or is alleged to have begun occurring prior to or as of the inception date of this policy; and/or

   b. any exterior insulation and finish system (EIFS), or any part thereof, or any substantially similar system, whether in whole or in part, including but not limited to the design, manufacture, sale, distribution, handling, construction, installation, application, maintenance or repair, including remodeling, service, correction or replacement, regardless of the brand name of the system installed; and/or

   c. any invasion or existence of water or moisture, including but not limited to accidental discharge and/or leaks, and/or mold, mildew, bio-organic growth, microorganisms, biological organisms, biaerosols, organic contaminants, and/or including but not limited to, rot and deterioration of property; and/or

   d. related to 'your work' below ground surface unless, prior to your commencing work, you have either contacted the appropriate local underground locating service, or verified such contact has been made by another with that responsibility, and said service has responded and marked, including but not limited to, all underground lines, pipes, cables, utilities, prior to commencement of 'your work'; and/or

   e. run off, diversion and/or ponding of water, inadequate drainage, backup and/or overflow, including but not limited to, water, sewer, drains, ditches, pipes, site preparation; and/or

   f. and occurring during the course of movement of any building or structure by an 'auto' or 'mobile equipment'; the period of movement 1) begins when the building or structure is removed from its old foundation, and 2) ends when the unloading of the vehicle begins for the purpose of placing the building or structure on its new foundation; and/or

M/E-043 (01/05)

g.  any operations involving any hot tar, wand, open flame, torch or heated applications of roofing, or membrane roofing; and/or your failure to determine weather from local weather bureau or station in advance of any roofing job, and having any 'open roof' to the elements, including but not limited to wind, hail, snow, rain, ice or any combination thereof. 'Open roof' as used here shall include any roof or section of roof where shingles, tar, felt paper, and any other protective covering has been removed, thereby leaving exposed any supporting structure, decking, building interior or contents of same to the elements; any 'open roof' must be securely covered in advance of any precipitation, and in advance of your leaving the job for any period of time.

M/E-043 (01/05)                                                                                   Page 2 of 2



**ESSEX INSURANCE COMPANY**

**DEDUCTIBLE ENDORSEMENT**

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CT2392 | 06/07/2007 | ANC CONSTRUCTION, INC. 720 BUSINESS PARK BLVD #10 |

**THIS ENDORSEMENT CHANGES THE POLICY.**

## SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| If provided by this policy: Bodily Injury, Property Damage, Professional or Personal and Advertising Injury Liability | $ 2,500 | Per Claim |
| | | |
| Exception: | | |
| _____ | $ | Per Claim |

[X] If this box is so marked, the basis of deductible is amended to apply 'on a per item per claim' property damage deductible basis.

1. Our obligation under Bodily Injury Liability, Property Damage Liability, Professional Liability, Personal and/or Advertising Injury Liability, or any other coverage under this policy, to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above. The deductible amount stated above shall be applicable to each claim and will include loss payments, adjustment, investigative and legal fees and costs, whether or not loss payment is involved.

2. The deductible amount stated above applies under the coverages respectively to all damages sustained by one person, or organization, as the result of any one occurrence.

3. The terms of this insurance, including those with respect to:
   (a) Our right and duty to defend any "suits" seeking those damages; and
   (b) Your duties in the event of an "occurrence," claim, or suit apply irrespective of the application of the deductible amount.

4. We may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

_____   /_____
AUTHORIZED REPRESENTATIVE   DATE

M/E-048 (4/99)                    INSURED

**ESSEX INSURANCE COMPANY**

**MARKEL**

## DEMOLITION/BUILDING WRECKING EXCLUSION

* Entry optional if shown in the Common Policy Declarations.  If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CT2392 | 06/07/2007 | ANC CONSTRUCTION, INC. 720 BUSINESS PARK BLVD #10 |

**THIS ENDORSEMENT CHANGES THE POLICY.**

The coverage under this policy does not apply to "bodily injury," "property damage," "personal injury," "advertising injury," or any injury, loss or damage arising out of:

1.  Damage to any abutting wall, adjoining wall, common or party wall;

2.  The use of explosives, or "ball and chain" or similar apparatus;

3.  Underground property damage of wires, conduits, pipes, mains, sewers, tanks, tunnels or any other similar property beneath the surface of the ground or water;

4.  Property damage caused by the collapse of or structural injury to any building or structure due to grading of land, excavating, burrowing, filling, back-filling, tunneling, pile driving, cofferdam work or caisson work or moving, shoring, underpinning, raising or rebuilding any building or part thereof;

5.  Demolition or wrecking of any building or structure which has an original height in excess of 4 stories.

The above applies regardless of whether the work is for total or partial removal, renovation, remodeling or reconstruction.

_____     / _____
AUTHORIZED REPRESENTATIVE         DATE

M/E-051 (4/99)                    INSURED



**ESSEX INSURANCE COMPANY**

## HABITATIONAL COMBINATION ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CT2392 | 06/07/2007 | ANC CONSTRUCTION, INC. 720 BUSINESS PARK BLVD #10 |

**THIS ENDORSEMENT CHANGES THE POLICY.**

The coverage under this policy does not apply to bodily injury, property damage, personal injury, advertising injury, or any injury, loss or damage arising :

1. out of any action(s), or allegation(s), of violation of building code(s), ordinance(s), or statute(s);

2. out of any type eviction action(s), or allegation(s) of discrimination;

3. if on the insured premises out of swimming pool(s), unless specifically classified and shown on declarations or schedule and
   (a) having Red Cross or similarly qualified/certified life-guard(s) on duty at all times during hours open for use, or
   (b) if no life-guard, 'rules signs' must be posted and clearly visible to include stating "No Life-Guard on Duty - Swim at Own Risk";
   (c) "Rules signs" must also include: "No one under age 14 permitted without adult supervision", "No alcoholic beverages permitted", "No glass containers permitted", "No horse play permitted", as well as all other rules of management;
   (d) life-saving equipment must be maintained poolside at all times including but not limited to floatation ring(s), shepards' hook, flotation ropes must be installed between "deep and shallow" end of pool, and depth markings must be clearly marked;
   (e) fenced, with self-closing, self-locking gates.

4. from water or moisture, and/or due to discharge, leakage, seepage, backup or overflow from sewers, mains, drains, pipes, plumbing, heating, refrigeration, air conditioning, standpipes, appliances, sprinkler systems, or ditches, streams, levees, or rain or snow admitted to the building interior.

M/E-091 (01/07)

 **ESSEX INSURANCE COMPANY**

## MINIMUM EARNED PREMIUM ENDORSEMENT

* *Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CT2392 | 06/07/2007 | ANC CONSTRUCTION, INC.<br>720 BUSINESS PARK BLVD #10 |

**THIS ENDORSEMENT CHANGES THE POLICY.**

If this insurance policy is cancelled at your request, there will be a Minimum Earned Premium retained by us of $ 2,675.00  or  25  %(per cent) of the premium, whichever is the greater. Cancellation for nonpayment of premium is considered a request by the first Named Insured for cancellation of this policy.

/

_____      _____
AUTHORIZED REPRESENTATIVE                  DATE

INSURED

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of Insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected Or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bod-

Copyright, ISO Properties, Inc., 2000

ily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

Copyright, ISO Properties, Inc., 2000

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

   (i) Any insured; or

   (ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

   (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

   (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

   (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

   (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

   (a) Less than 26 feet long; and

   (b) Not being used to carry persons or property for a charge;

Copyright, ISO Properties, Inc., 2000

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced be-

cause "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III - Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

Copyright, ISO Properties, Inc., 2000

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III - Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance ; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

   This insurance does not apply to:

   a. **Knowing Violation Of Rights Of Another**

      "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

   b. **Material Published With Knowledge Of Falsity**

      "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

   c. **Material Published Prior To Policy Period**

      "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

   d. **Criminal Acts**

      "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

   e. **Contractual Liability**

      "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

   f. **Breach Of Contract**

      "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

   g. **Quality Or Performance Of Goods - Failure To Conform To Statements**

      "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

   h. **Wrong Description Of Prices**

      "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

   i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

      "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

      However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

 Copyright, ISO Properties, Inc., 2000

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web-sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

Copyright, ISO Properties, Inc., 2000

e. **Athletics Activities**

To a person injured while taking part in athletics.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage A.

h. **War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All costs taxed against the insured in the "suit".

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) Agrees in writing to:

         (a) Cooperate with us in the investigation, settlement or defense of the "suit";

         (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         (c) Notify any other insurer whose coverage is available to the indemnitee; and

         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2) Provides us with written authorization to:

         (a) Obtain records and other information related to the "suit"; and

         (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I - Coverage A - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

     (1) How, when and where the "occurrence" or offense took place;

     (2) The names and addresses of any injured persons and witnesses; and

     (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

     (1) Immediately record the specifics of the claim or "suit" and the date received; and

     (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

     (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I - Coverage A - Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

CG 00 01 10 01                    Copyright, ISO Properties, Inc., 2000                    Page 10 of 14

5. **Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in a. above;

(2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

CG 00 01 10 01          Copyright, ISO Properties, Inc., 2000

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

      Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop draw-

ings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke,

vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall

Copyright, ISO Properties, Inc., 2000

be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this Insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

COMMERCIAL GENERAL LIABILITY
CG 21 69 01 02

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
# WAR OR TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion i. under Paragraph 2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability is replaced by the following:

2. **Exclusions**

This insurance does not apply to:

i. War Or Terrorism

"Bodily injury" or "property damage" arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

(4) "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

(1) The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

(2) Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

(a) Physical injury that involves a substantial risk of death; or

(b) Protracted and obvious physical disfigurement; or

(c) Protracted loss of or impairment of the function of a bodily member or organ; or

(3) The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

(4) The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

CG 21 69 01 02                     © ISO Properties, Inc., 2001                     Page 1 of 3

(5) Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs (1) and (2), immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:

2. Exclusions

This insurance does not apply to:

War Or Terrorism

"Personal and advertising injury" arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

(4) "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

(1) The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions ; or

(2) Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

(a) Physical injury that involves a substantial risk of death; or

(b) Protracted and obvious physical disfigurement; or

(c) Protracted loss of or impairment of the function of a bodily member or organ; or

(3) The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

(4) The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

   © ISO Properties, Inc., 2001                    CG 21 69 01 02

(5) Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs (1) and (2), immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C.  Exclusion h. under Paragraph 2., Exclusions of Section I - Coverage C - Medical Payments does not apply.

D.  The following definition is added to the Definitions Section:

"Terrorism" means activities against persons, organizations or property of any nature:

1.  That involve the following or preparation for the following:

    a.  Use or threat of force or violence; or

    b.  Commission or threat of a dangerous act; or

    c.  Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2.  When one or both of the following applies:

    a.  The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

    b.  It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

© ISO Properties, Inc., 2001

COMMERCIAL GENERAL LIABILITY
CG 21 77 11 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCEPTION TO TERRORISM EXCLUSION FOR CERTIFIED ACTS OF TERRORISM; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. With respect to any exclusion of terrorism in this Coverage Part or attached to this Coverage Part by endorsement, such exclusion does not apply to a "certified act of terrorism".

That exclusion also does not apply to an act which meets the criteria set forth in Paragraph 2. of the definition of "certified act of terrorism", when such act resulted in aggregate losses of $5 million or less.

B. With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

C. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

CG 21 87 01 07

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. Applicability Of The Provisions Of This Endorsement

1. The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Part or Policy; or

   b. A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

      (1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

      (2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

      (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

2. If the provisions of this endorsement become applicable, such provisions:

   a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

   b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

CG 21 87 01 07

© ISO Properties, Inc., 2005

Page 1 of 3

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

a. That involve the following or preparation for the following:

(1) Use or threat of force or violence; or

(2) Commission or threat of a dangerous act; or

(3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

b. When one or both of the following applies:

(1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

(2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

C. The following exclusion is added:

EXCLUSION OF TERRORISM

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

a. Physical injury that involves a substantial risk of death; or

b. Protracted and obvious physical disfigurement; or

c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs C.5. or C.6. are exceeded.

With respect to this Exclusion, Paragraphs C.5. and C.6. describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

© ISO Properties, Inc., 2005